### LYNCH v. NUGENT.

1. **Arbitration**: AGREEMENT : CONSTRUCTION : AWARD. Defendant was pastor of a church and manager of a fair given in its behalf, in which enterprise he was assisted by a committee of his own appointment. Plaintiff's assignor paid a large amount of money to the fair upon an agreement, which was not carried out, and he brought an action against defendant to recover the money so paid by him, on the alleged agreement of defendant to return it within a reasonable time. The defendant denied the alleged agreement. The cause was submitted to arbitrators, who were authorized to consider the questions involved in the cause, and determine whether the contract alleged in the petition was made, whether any money was due plaintiff on said contract, and whether any judgment should be rendered therefor, and, if so, for what sum. The arbitrators found, among other things, that defendant had referred the demand to his committee for adjustment, and that, they having failed in so doing, defendant agreed with plaintiff's assignor that, if the committee did not settle and adjust the claim, he would take it out of their hands, and adjust

it himself, but that the committee afterwards convinced defendant that there was nothing due on the demand. They also found, however, that defendant should pay plaintiff's assignor a certain sum, to recover which award this action was brought. *Held*—

(1) That upon the case submitted the arbitrators were authorized to find for plaintiff, if they found for him at all, only upon an express contract.

(2) That the finding that defendant agreed to "adjust" the demand, upon failure of the committee so to do, was a finding of an express contract, on which defendant was liable, if by the word "adjust" he meant that he would pay the money ; and

(3) That the meaning of the word "adjust," as used by defendant, was for the arbitrators to determine, and that, in the absence of the evidence, it must be presumed that their finding was not without support.

2. **The Same.** The submission provided that the arbitrators should make inquiry as to certain publications in newspapers, and find whether they were true or false ; and, if false, that the writers should be obliged to make retraction. *Held* that this did not require the arbitrators to adjudge that retraction be made, in case they found the publications to be false.

3. ————: DECISIONS ON QUESTIONS NOT SUBMITTED : EFFECT. Where arbitrators made decisions and recommendations entirely foreign to the questions submitted, but they were of such a nature that they could not have affected the result as to the matters submitted, *held* that they did not avoid the arbitration. ( See opinion for citations.)

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FILED, JUNE 2, 1890.

In December, 1884, there was pending in the district court of Polk county a suit of M. W. Lynch *v.* J. F. Nugent ( parties herein ), upon a petition as follows : "*Second Count.* The plaintiff states that the defendant is pastor of the Catholic church in East Des Moines, know as 'St. Michael's Parish,' and has the principal control and management of said church. That he and the said church devised a scheme for raising money for himself and the said church, which was as

follows, to-wit: They proposed to bestow upon one person receiving the most votes a seal-skin cloak, and upon another person receiving the most votes a horse ; and required that each person who voted should pay ten cents for each and every vote cast. That one Morris Lynch cast the sum of five hundred votes for a certain person, and won for her the cloak, and cast thirty-one hundred votes for a certain person, and won the horse for that person ; but that said church and said defendant decided that they would not carry out the original plan, and, therefore, refused to turn over the cloak or the horse to the persons for whom the said Morris Lynch had voted, and who were entitled to them under the arrangement, and in consideration thereof the said defendant agreed orally with the said Morris Lynch that he would return to him, within a reasonable time, the money he had so invested, to-wit, the sum of three hundred and sixty-five dollars, but, although more than one year has elapsed, he has failed, and now refuses, so to do. That plaintiff is now the owner of said Morris Lynch's claim therefor, by assignment in writing, which is lost, and this plaintiff is not able to give an exact copy thereof. If plaintiff shall recover upon the first count of his petition, he does not seek to recover upon the second, and *vice versa*." The other count of the petition recites the facts as to the plan of raising money, and alleges that the defendant requested Morris Lynch to expend the money, and that he would refund it immediately after the fair was over.

The answer of the defendant denied that he requested Lynch to cast the votes at the fair, or that he entered into any agreement with Lynch, or that Lynch expended any money in pursuance of an agreement by which defendant was to reimburse him, or that he agreed, after the money was expended, to return the same.

The parties thereafter entered into an agreement for arbitration, in writing, with the arbitrators named therein. The following are the essential portions of the

agreement for submission: "It is agreed by the said parties hereto that the matters involved in said cause shall be submitted to a board of arbitrators, to consist of five persons, namely: * * * It shall be the duty of said committee to consider the questions involved in said cause, as stated in. the petition of plaintiff on file in said cause; to require the sworn evidence of such witnesses as may be produced by the parties on either side of said suit, and investigate the several matters therein set forth; and said committee shall have the power to demand any further testimony on any question in said cause that it may deem necessary. Said committee shall be empowered to determine from such records and files in said cause, and from the testimony adduced, whether the said contract alleged in said petition was made and entered into by the said defendant as therein alleged; whether there is any money due to the plaintiff in said cause on the contract; whether the allegations published in the *Capital*, *News* and *Register*, or either of said papers, were true or justifiable, as shown by the testimony and records in said cause. It shall be the duty of said committee to make a written finding on the said questions, and render judgment thereon, namely, whether any judgment money shall be paid by the said defendant to the said M. W. Lynch, and, if so, what sum." The submission also provides for a finding and adjustment of matters pertaining to newspaper publications and comments, or remarks by the defendant from his pulpit, which will be noticed in the opinion.

The following is copied from the report of the arbitrators: "In the month of December, 1883, the, Rev. J. F. Nugent, pastor of St. Michael's church, of Des Moines, Iowa, held a fair in Rice's Hall, in said city, for the benefit of said church. The said Rev. J. F. Nugent appointed a committee, consisting of James Garrity, John Harkins and John Flannery, whose duty it was to take the more immediate and active management of the fair, under his general supervision and

control. Among the various schemes for raising money at said fair, it was arranged that a certain seal-skin cloak and a certain horse should be bestowed, the former to the young lady who should receive the greatest number of votes, and the latter upon the gentleman receiving the largest number of votes, and that each voter should pay the sum of ten cents for each vote. In carrying out this scheme, and in order to stimulate voting, it was proposed by Morris Lynch to one or more of the committee of management that he cast a large number of votes for the disposal of the horse to one Patrick, and that after the close of the fair the money so advanced by said Lynch should be returned to him. But it does not appear from the evidence that any member of the committee acceded to the proposition. Nevertheless, the said Lynch, under the evident impression that he could have his money returned to him, proceeded to cast a large number of votes for said Patrick. Many persons at the fair became greatly excited. The said Morris Lynch especially squandered his money without sense or reason. Having "blown in," as he termed it, all his own money, he borrowed some hundreds of dollars of the said Patrick, one of the proposed recipients of the horse ; invested part of it himself ; transferred two hundred to three hundred dollars secretly, without the knowledge of the committee, to one Burnett, to be invested in the interest of the said Patrick. But, as the opposition candidates were receiving very active support, the said Lynch borrowed from the firm of Lynch Bros. some hundreds of dollars in checks on their bank account, which checks were invested in sums of one hundred dollars at a time, not only by himself, but large amounts were transferred to Burnett to be used by him, and were used by him. The fair closed in great excitement on Saturday night. It does not appear that any one was declared the winner of the horse or of the cloak, and neither was transferred, though it appears from the testimony that Patrick had a plurality of some eight hundred votes for the horse.

On the following Monday morning the checks of Lynch Bros. were presented at the bank for payment, and were refused by order of the drawers of the checks, and they are still unpaid in the hands of Rev. J. F. Nugent. The board of arbitrators find that the conduct of the said Lynch in the premises was so reckless and irrational, and the money squandered so excessive, that neither the Rev. J. F. Nugent, nor the committee, can afford to retain the money, even if there was no express agreement at any time so to do. But the board find that some time after the fair was over, while Morris Lynch was insisting and clamoring for a return of the money, Father Nugent referred the matter to the committee of management, and requested said committee to settle and adjust the claim. The committee thereupon made an offer of settlement, but the proposition was not accepted. Subsequently Father Nugent agreed with said Lynch that, if the committee did not adjust and settle the claim, he would take the matter out of their hands, and adjust it himself. But it appears that nothing was done, and, on further consultation, the committee convinced him that nothing was due to said Lynch. The board find, from the testimony of Morris Lynch, that it was his intention at the time of the fair to invest in good faith some fifty or sixty dollars in voting for Patrick. In view of all the testimony adduced before the board, it is found that there is due from J. F. Nugent to J. C. Lynch, assignee of Morris Lynch, the sum of two hundred dollars, and the board orders that each party shall pay his own witness fees in the case in the circuit court, and that the remaining costs in the case shall be paid by the plaintiff."

Morris Lynch assigned his cause of action to the plaintiff, and this action is to recover the amount of the award, the petition averring the facts as to the pendency of the suit, the agreement to submit to arbitration, the fact of the investigation, and the award; attaching the pleadings, agreement for submission and award, as exhibit thereto. To the petition there is a demurrer,

based on several grounds, which we notice in the order of argument. The district court overruled the demurrer, and, the defendant electing to stand thereon, judgment was entered for plaintiff, from which the defendant appeals.

*Nugent & Connolly*, for appellant.

*H. S. Wilcox*, for appellee.

GRANGER, J.—I. It is said in argument that the plaintiff seeks to recover on an express contract, as to

1. ARBITRATION: agreement: construction: award.

which there is a denial, and, as we understand appellant, that the arbitrators must stand appellant, that the arbitrators must have found for him on such a contract or not at all; and in this respect we think appellant's position correct, as the averments of the petition are of express promises to pay or return the money expended. The arbitrators clearly find that there was no previous promise to pay, or request for Lynch to expend, the money. It is, then, a question only if defendant, after the expenditure, and in pursuance of a conclusion not to carry out the original plan, agreed that he would return the money to Lynch. This is the ground on which recovery is sought in one count of the petition. The count was not assailed by demurrer, and its sufficiency cannot now be questioned. The stipulation was for the arbitrators to determine the liability of the defendant, under the state of facts as pleaded. The arbitrators find that the defendant is indebted to plaintiff in the sum of two hundred dollars, but it is urged that the particular facts as found by the arbitrators negative any right of recovery; and reference is made to the findings as to how the plan of raising money by voting was suggested by Morris Lynch, and the reckless course he pursued, and that neither the committee nor the defendant acceded thereto. But these findings do not reach the cause of action stated in the count we are considering. They refer mainly to the other count. A finding is that after the fair Lynch was "clamoring"

for a return of his money, and there were efforts at settlement, and that the defendant referred the matter to the committee of management, and requested it to settle and adjust it ; that the committee made a proposition which was rejected ; that thereafter the defendant agreed with Lynch that, if the committee did not settle and adjust the claim, he would take the matter out of its hands, and adjust it himself. It is upon this agreement that plaintiff seeks to recover, and he is certainly entitled to recover, if the defendant meant, by adjusting the matter, that he would pay the money or any part of it. The word "adjust" has received some attention in argument, as that it means "to settle or bring to a satisfactory state ; to dispose of the matter in a just manner."

In determining a question of fact, it is proper to inquire after the sense intended by the parties using the word, having in view in so doing the ordinary acceptation or significance of the word. Within certain limitations in ordinary use, the words "adjust" and "settle" have different meanings. They are not infrequently used in the sense of "paying." They are synonyms, and in some of their uses are equivalents of "to fix—to arrange ;" in others, "to determine ; to establish ; to regulate." What the defendant meant by saying that he would adjust the matter himself was clearly a question for the arbitrators. The testimony on which they based their findings is not before us, and we must assume that the findings have support, unless the assumption is overborne by the record. We think, however, the assumption is strengthened by the record. Looking to the particular facts found, we see Lynch was at all times claiming the return of the money.

The committee, under its direction to adjust the matter, made a proposition which was rejected. After this, defendant agrees that he will adjust it himself if the committee does not. Such a state of facts is hardly consistent with the idea of adjustment, except by payment. Then, again, it is found that after this agreement

the committee "convinced" defendant " that nothing
was due to said Lynch." This finding affords a strong
inference that the agreement was made under a convic-
tion that something was due, and, under the pleadings,
the question is, did he so agree? not, was something
really due? It is urged that the board exceeded its
authority by taking as the basis of its finding "the
reckless and irrational conduct of Morris Lynch," but
in this respect the record is misapprehended. We
understand that the board did not make such conduct
the basis of its finding, but the agreement, as we have
stated ; and this conclusion disposes of a number of
other questions presented in argument.

II. The submission provided that the board of
arbitrators should make inquiry as to certain publica-
tions in the " *Capital*, *News* and *Register*,"
and make findings "whether the said news-
paper articles were true or false, and if found to be
false, the said person whose name appeared to the arti-
cles shall, over his own name, be obliged to retract the
said articles, or so much thereof as is adjudged untrue ;
and said retraction shall be published in the same news-
papers where the said article so found to be untrue was
first published." We need make no inquiry as to a
failure to make retractions from the pulpit, or a neces-
sity therefor, as plaintiff makes no complaint in that
respect. There seems to have been an article in the
*Register*, entitled, " An Untruthful Priest," in which
was a letter, over the name of Morris Lynch, and the
board find that the letter was not written by Morris
Lynch, but by another person, and there is no finding
that Lynch was responsible therefor. The finding, in
substance, is that Lynch acknowledged, under oath
before the board, that the letter was false, and expressed
a regret that it was published over his name.

A complaint is made that the award is invalid
because it does not provide for a retraction by Morris
Lynch, and appellant says: " It was expressly agreed
that, in case the articles were found false, then they

*2. The same.*

should be retracted over the name of the person whose name appeared to the articles; and this, regardless of who was the author." In this respect there seems to be a misapprehension as to the duty of the arbitrators. By the stipulation for submission the board was only to determine the truth or falsity of the publications. If found to be false, the stipulation then fixed the duty of the party making the publication; but there is nothing requiring the arbitrators "to adjudge that the same be retracted," as stated in the demurrer. If it be conceded that a retraction by Morris Lynch was a condition precedent to a right of recovery on the award, still it cannot aid appellant on this appeal, as no such point is presented by the demurrer or in argument.

III. The arbitrators stepped somewhat aside to render some unsolicited service by way of promoting harmony, and decided some questions not submitted, and gave some advice unasked, and in this respect it is said that they exceeded their authority; and it is true, but their acts in this respect are only void. These decisions and recommendations are entirely foreign to the questions submitted, and are of such a nature that they could not have affected the result as to the matters submitted, and in such cases they do not have the effect to avoid the arbitration. *Fox v. Smith*, 2 Wils. 267; *Addison v. Gray*, 2 Wils. 293; *Orcutt v. Butler*, 42 Me. 83; *Richardson v. Payne*, 55 Ga. 167; *Bogan v. Daughdrill*, 51 Ala. 312. These considerations are conclusive on this appeal, and the judgment is

3. ——: decisions on questions not submitted: effect.

AFFIRMED.