## McKenna, Appellant, *v.* Lyle.

[Marked to be reported.]

*Arbitration—Revocation—Abandonment of revocation.*

Where a submission of partnership disputes to arbitration has been regularly revoked by one of the parties before the award is made or filed, the fact that the party revoking subsequently deposited certain moneys collected by him in a bank designated in the agreement for arbitration, does not show that he has abandoned his revocation of the submission.

*Irrevocable submission.*

Where a submission to arbitration is part of an agreement containing other terms to be performed by the parties, and especially if those terms have been executed in whole or in part, the submission is not revocable.

It seems that a submission of partnership disputes to arbitration is not revocable where it is also agreed that the partnership shall be dissolved, that each partner shall be entitled to a commission on all collections due to the firm, that the money so collected shall be deposited in a particular bank to the credit of the counsel of the firm, to be paid out on the orders of the firm, or, in case of refusal, upon the orders of the arbitrators, and that all suits brought by or against the firm shall be conducted by the firm attorneys, who are named, and that the costs and expenses of the reference shall be paid out of the collected funds of the firm.

*Waiver of rights under award of arbitration.*

After a bill in equity was filed, the parties, who were partners, agreed to submit the matters in dispute to arbitration.   Before the award was filed, one of the parties revoked the submission.   After the revocation the

award was filed but was subsequently stricken from the record without any appeal being taken. The parties then proceeded under the bill and cross-bill in the case, procured the appointment of an examiner and master, offered a large amount of testimony and united in a trial on the merits. The court below, on the recommendation of the master, dismissed the bill on the ground that the parties were bound by the agreement of submission. *Held*, that the parties had waived the submission and award and that it was the duty of the master to decide the case on its merits.

Argued March 27, 1893. Appeal, No. 170, July T., 1892, by plaintiff, Francis McKenna, from decree of C. P. No. 4, Phila. Co., Dec. T., 1889, No. 627, dismissing bill in equity against James Lyle. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Bill and cross-bill for account between partners.

It appeared from the record that after the bill and cross-bill had been filed the parties entered into an agreement of arbitration which was as follows:

"It is hereby agreed between the undersigned co-partners of the firm or Lyle & McKenna, wholesale liquor dealers, as follows, viz.:

"Whereas a difficulty exists between the said parties in reference to their partnership matters, and a bill and cross-bill in equity has been filed by them in C. P. No. 4, Dec. T., 1889, No. 627, and to avoid the expenses and delay incident thereto, these presents are executed. The agreement being as follows, viz.:

"Each partner hereby names a party as arbitrator or referee to examine the books of account of the firm, to hear both parties as to their claims against each other and the partnership matter, (under oath, if desired,) with their counsel present, if desired, and to ascertain and find a final award between the said parties; which award or finding shall be, as to the said parties, a finality. Neither party filing exceptions, nor appealing therefrom. The amount or amounts, thus ascertained, to be paid by the party to the other forthwith, and in default thereof suit may be immediately brought therefor. Mr. Lyle names Charles Castle and Mr. McKenna names Nicholas J. Griffin as the arbitrators.

"In case they cannot agree between themselves they shall call in a third party as umpire, whose decision shall be then

final.  That is, the two forming a majority, with the like effect as if the arbitrators themselves had so agreed.

"All the accounts and books to be freely open to the partners and to the arbitrators, and full aid and service to be rendered by the parties to the arbitrators and to each other.  Each partner is fully empowered hereby to collect all the unpaid debts, and to be paid 4 per ct. on the amount so collected from the moneys when received without any interference by the other.  The moneys collected to be deposited within twenty-four hours thereafter in the Philadelphia Trust and Safe Deposit Company in the names of Henry B. Freeman and Aaron Thompson, attorneys for the firm.  From the moneys so collected the rents and merchandise debts to be first paid by them, the said attorneys, on the joint orders of the firm, to them, or, in case of a refusal, upon the orders of the arbitrators ; afterwards the amount found due the partners by the arbitrators.  Then the balance one third to McKenna, and two thirds to Lyle.  All suits brought against or by the firm to be conducted by the said attorneys, as well as all other matters in connection therewith, whose fees for advice and service, as well as costs and expenses to be paid out of the firm's moneys equally.  The expenses of the reference to be paid equally by the firm.  Each partner to sign a paper to debtors of the firm to pay either one the indebtedness.  Notice to the contrary, heretofore given, to be withdrawn.

"The bills already filed to be withdrawn upon payment of costs.  The arbitrators to meet forthwith and proceed without delay until final settlement.

"The above fees, costs and expenses referred to are first to be divided equally and paid out of the moneys collected.  Then to be apportioned, viz. : One third to McKenna and two thirds to Lyle by the arbitrators after the payments as above, upon their final finding, and upon this principle are thus to be deducted on ascertaining the amounts due either partner.

"The partnership is hereby agreed to be dissolved on the first day of May, A. D. 1890, and in case all the moneys should not be collected and the matters closed before this dissolution, then either of the partners shall have the same right to collect and deposit as hereinafter set forth under above terms."

Other facts appear by the opinion of the Supreme Court.

The court dismissed exceptions to report of master, John M. Campbell, Esq., and confirmed the report, recommending dismissal of bill.

*Errors assigned* were (1) confirmance of master's report ; (2) dismissal of exceptions, quoting them.

*Aaron Thompson,* for appellant.—A submission whether by deed or otherwise may be revoked before execution though declared to be irrevocable : Power v. Power, 7 Watts, 205. A submission may be revoked at any time before the award is signed : Johnson v. Andress, 5 Phila. 8 ; Wood v. Finn, 1 Clark, 396 ; Robinson v. Bickley, 30 Pa. 390. The general rule is that until actual notice of an award made (not intended), the party may revoke : Watson on Arb. 131 Hungate's Case, 5 Rep. 103 ; Block v. Palgrave, Cro. Eliz. 797 ; Green v. Pole, 6 Bing. 443 ; Skee v. Coxon, 10 B. & C. 483.

The case of Shisler v. Keavy, 75 Pa. 79, cited by the master was where a revocation was on the same day of the award, and notice only given to one of the referees, and therefore is not in point. Neither is the other case he cites of McCahan v. Reamey, 33 Pa. 536, as that turned on the exceptions to the award in an action of assumpsit thereon. And yet in a later case, Speer v. Bidwell, 44 Pa. 23, upon this very point the court cite McCahan v. Reamey, on page 26, and holds that for misbehaviour of arbitrators an award would be set aside.

There is no case reported where a revocation was not sustained except where master or examiner was appointed by the court before the reference and not subsequently thereto, as in our case, and also where answer and replication had been previously filed.

In Ratapier v. Ratapier, 2 Wash. C. C. R. 180, the court held that if a cause be even discontinued and afterwards the defendant appears and makes defence, he cannot at the trial take advantage of the discontinuance.

By pleading to the merits and going to trial the defendant waives a rule of reference : Creps v. Durham, 69 Pa. 456 ; Christman v. Moran, 9 Pa. 487 ; St. Bartholomew's Church v. Wood, 80 Pa. 219; Wallace's Ap., 5 Pa. 103.

The court of common pleas has no power to set aside an award

under the act of 1705, and refer back to a referee, but if they do refer back and the parties appear and try the matter in controversy, the error is cured: Brooke v. Bannon, 3 W. & S. 382.

For corruption or misbehavior of the arbitrators any award either at common law or statute may be assailed, notwithstanding a stipulation that there shall be no exception or appeal: Speer v. Bidwell, 44 Pa. 23; 1 Stephens' Nisi Prius, Arbitration Award, p. 91; Phipps v. Ingram, 3 Dowl. 669.

The rule that a master's finding of fact is entitled to the same consideration as the verdict of a jury, and will not be set aside unless clearly and palpably against the weight of evidence, does not apply where the finding is a deduction from undisputed facts, or from uncontradicted and credible evidence: McConomy v. Reed, 152 Pa. 42.

*Henry B. Freeman*, for appellee.—It is most respectfully submitted that this appeal should be quashed, because the appellant has expressly waived his right thereto, which waiver is binding and conclusive: Cuncle v. Dripps, 3 P. & W. 291; McCahan v. Reamey, 33 Pa. 536; Williams v. Danziger, 91 Pa. 233; Ranck v. Becker, 12 S. & R. 416; Bingham v. Guthrie, 19 Pa. 422.

In the case of Ankermiller v. O'Byrne, 2 Mona. 766; and Groll v. Gegenheimer, 147 Pa. 162, in which the right of objection or exception was waived in writing, the appeals were quashed and the penalty allowed.

If parties stipulate that disputes shall be submitted to the arbitrament of a particular individual or tribunal they are bound by their contract and cannot seek redress elsewhere: Leebrick v. Lyter, 3 W. & S. 365; Navigation Co. v. Fenlon, 4 W. & S. 205; McGheehen v. Duffield, 5 Pa. 499; Snodgrass v. Gavit, 28 Pa. 221; Lauman v. Young, 31 Pa. 306; McCahan v. Reamey, 33 Pa. 536; Herdic v. Bilger, 47 Pa. 60; Reynolds v. Caldwell, 51 Pa. 298; Irwin v. Shultz, 46 Pa. 74; McManus v. McColloch, 6 Watts 357.

If the submission provide that the award shall be final and conclusive, and that neither party shall have a right to appeal or file exceptions, the parties are concluded by their agreement: McCahan v. Reamey, 33 Pa. 535.

The arbitrators have the right to decide on the evidence and its credibility: Com. v. LaFittry, 2 S. & R. 106.

An award though erroneous in point of law, cannot be impeached collaterally: Zeigler v. Zeigler, 2 S. & R. 286.

The agreement could not be revoked if executed; if executed in part, the parties must be restored to their original position. The cases cited by appellants do not apply to an agreement executed in part or in whole. It could only be set aside or assailed on the ground of corruption or misbehavior of the arbitrators: Speer v. Bidwell, 44 Pa. 23.

OPINION BY MR. JUSTICE GREEN, May 31, 1893:

This proceeding was a bill in equity for the dissolution of a partnership subsisting between the plaintiff and defendant, and for a settlement of the accounts of the firm. The bill was filed on February 15, 1890. On the 11th of March, 1890, the parties, by an agreement in writing, referred all matters in dispute to two arbitrators with a provision that their award should be final, neither party to file exceptions or to appeal from the same. It was also agreed that the partnership should be dissolved as of May 1, 1890, that the accounts and books should be open to the arbitrators and to both parties, and that each partner should have power to collect all unpaid debts due the firm, to be paid a commission of four per cent on the amounts collected, and that the moneys collected should be deposited in a bank named, to the credit of the counsel for the firm, and to be paid out on orders of the firm or of the arbitrators. The ultimate balance was to be paid, one third to McKenna, and two thirds to Lyle. A cross-bill was filed and it was agreed that both bills should be withdrawn upon payment of costs. The arbitrators proceeded to perform their duties as such and held a number of meetings, examined the books and accounts, and, on May 6, 1890, agreed upon and signed a written award finding that there was due to Lyle $4,143.17, and that there was due by McKenna to the firm $914.08. Before this award was made or signed, to wit, on April 25, 1890, McKenna addressed a letter to the arbitrators of which the following is a copy:

PHILADELPHIA, April 25, '90.

To Messrs. Castle & Griffin,

Gentlemen: As you have up to this present time given me no hearing with my witnesses, although so requested by me for such hearing, I give you each notice that I hereby revoke

the appointment of yourselves as arbitrators in the disputed matters of the partnership of Lyle v. McKenna.

Respectfully

FRANCIS McKENNA.

It is not questioned that this notice was duly served on the arbitrators at once and before the award was either made or signed.

Upon examining the docket entries a rather singular state of things appears. In point of fact neither the bill nor the cross-bill was withdrawn. On Dec. 10, 1890, the award was filed and on December 13, 1890, exceptions by the plaintiff were filed. On March 18, 1891, the death of Lyle was suggested and a sci. fa. was issued to bring in his executrix. Then on April 14, 1891, a rule to plead, answer or demur was entered to which, on May 14, 1891, the executrix filed a plea and answer. June 6, 1891, replication filed, and on June 10, 1891, the court appointed an examiner. Then on January 21, 1892, a rule was entered to strike off the award of the arbitrators which had been filed Dec. 10, 1890, thirteen months before, and on January 30, 1892, this rule was made absolute. On March 5, 1892, the examiner was appointed master and he filed his report on April 25, 1892, with the exceptions thereto made before him.

It thus appears that notwithstanding the agreement to withdraw the bill and cross-bill they were never withdrawn, but the parties proceeded in the cause before the examiner and afterwards before the master who made a final report. In his report he recites that under his appointment the parties attended before him with their proofs and witnesses, that a large amount of testimony was taken embracing nearly two hundred pages and occupying much time, but instead of deciding the case upon its merits, the master reports that the parties had made the agreement of submission before referred to, and that they were bound by it without any right to file exceptions or to appeal. He does not report any decree, but in a supplemental report filed after the exceptions were submitted to him, he recommends that the bill be dismissed. The master's report was confirmed by the learned court below and the bill was dismissed, and from that decree this appeal was taken.

It will be observed that the proceedings are incongruous.

The award of the arbitrators was first filed, long after it was made, and more than a year afterwards it was stricken off. Then the master was appointed and the parties proceeded to try the case on its merits before him just as though there had never been an award, and apparently without any objection on either side. No attempt to enforce the award was made either by an action on it or by seeking a decree in the case in accordance with its terms. The master founded his report exclusively upon the award and no other question is discussed or decided by him except the binding efficacy of the award.

We are unable to agree with him upon that subject. He bases his finding upon the proposition that the agreement of submission had been fully executed and that therefore the notice of revocation was given too late. The only fact upon which he founds his conclusion is stated by himself as follows : " It appears from the evidence that on the very day of the filing of the report of the arbitrators, May 6, 1890, there was deposited in the Philadelphia Trust Company, which was agreed upon as the depository of the funds of Lyle & McKenna, pending the settlement of their differences, the amount of $669.60, showing that as far as Mr. McKenna was concerned he must have recognized the articles of arbitration as having an existence upon May 6, 1890, because the deposit was made by him."

With entire respect to the learned master, we think this was a nonsequiter. The money being in the hands of McKenna should be deposited somewhere, and no reason is given why it should not be deposited with the Philadelphia Trust Company as well as with any other institution. But even if he had deposited it there because it was provided in the agreement of submission that the money should be deposited there, that is no reason why McKenna should thereby be adjudged to have abandoned his revocation of the submission. These two subjects have no necessary connection. He had just given the formal notice of revocation, eleven days before, and it is inconceivable that he intended to abandon that notice and give his consent to a resumption of jurisdiction by the arbitrators, by such an entirely inconsequential act as a deposit of some of the firm money, collected by him, in the bank in which the partners had agreed the firm moneys should be deposited. In other words, there is no inconsistency in the fact of such a deposit

with the continuance of the revocation.    If the revocation were operative, its effect had already been accomplished, the submission had come to an end and the authority of the arbitrators had ceased.   It could not be restored except by a fresh agreement of submission or a plain and direct notice of the withdrawal of the revocation.   But nothing of that kind occurred.   On the contrary the case was proceeded with by the parties in regular course to a trial on the merits just as though there never had been any submission.   These subsequent proceedings are vastly more persuasive that the defendant consented to a waiver of all claim under the award, than is the fact of the deposit in bank, that the plaintiff had abandoned his revocation.

The master in his report cites the case of McCahan v. Reamey, 33 Pa. 535, as authority for his conclusion that the revocation was nugatory, because the party revoking, subsequently acted under the submission.   An examination of that case however shows that there was no question of revocation in it.   There was no revocation in the case by either party.   The question presented was simply whether a party to a submission without any right to file exceptions or appeal, might nevertheless file exceptions and appeal, and it was held he could not.   In the supplemental report the master refers also to the case of Shisler v. Keavy, 75 Pa. 79, from which he quotes as follows : " A submission in writing cannot be revoked except by writing given to the referees or a majority of them."   But that was precisely the kind of revocation which was given in this case and hence the case is not in point.   It is true the master says in his supplemental report that McKenna, after his notice of revocation, " received moneys, deposited moneys, rent was paid and other business transacted," but as these were all acts which it was his right and duty to do and perform in his capacity as a partner, no inference of his abandonment of his revocation flows from any of them.

The authorities as to the right of a party to revoke a submission at any time before the award is made are so familiar that no discussion of the question is needed.   But, under the modern decisions, that rule applies only to cases of bare submission, and there is a line of cases, in which it is held, that where a submission is part of an agreement containing other

ter.ns to be performed by the parties, and especially if those terms have been executed in whole or in part, the submission is not revocable. Illustrations of this will be found in the cases of Lewis' Ap., 91 Pa. 359; Williams v. Tracey, 95 Pa. 308; White's Ap., 108 Pa. 473; Mitchell v. Newman, 4 Pennypacker 443.

In the present submission there was an agreement that the partnership should be dissolved on May 1, 1890, also that each partner should be entitled to a commission of four per cent on all collections of debts due to the firm, also that the moneys so collected should be deposited in a particular bank to the credit of the counsel of the firm who were named, and should be paid out on the orders of the firm, or, in case of refusal, upon the orders of the arbitrators. All suits brought by or against the firm were to be conducted by the same attorneys, and the costs, and expenses of the reference were to be paid equally out of the collected funds of the firm. All of these things are outside the partnership and would not be practicable except under the agreement of submission. If there were nothing else in the case affecting the question under consideration, we would probably be obliged to hold that the submission was irrevocable.

But the conduct of the parties as hereinbefore stated has rendered that question of no significance. When the award was stricken off the record on January 21, 1892, no appeal having been taken, and no further attempt having been made to secure its enforcement, it ceased to have any efficacy. Also when the parties proceeded with the case by having an examiner appointed and taking testimony on both sides during several months, after the regular pleadings had produced an issue to be tried, and, after all that, had a master appointed and proceeded before him to final hearing on the merits, they undoubtedly waived all rights under the submission and award. The plaintiff of course did not recognize the submission or the award, or do or propose to do anything under its terms. The defendant made no further efforts to have it enforced and united in the trial of all the merits of the case under the bill and answer. It is impossible to regard this action of the parties as anything else than a waiver of the submission and award. That being so, it was the duty of the master to decide the merits of the case and report his findings to the court below

with the recommendation of such a decree as he thought proper. This he has not done, and the decree must be reversed and the record be sent back with directions to the court below to recommit the case to the master for further proceedings.

The decree of the court below is reversed at the cost of the appellee, and the record is remitted to the court below with instructions to recommit the case to the master for further proceedings in accordance with this opinion.