AMES CANNING COMPANY, Appellee, v. DEXTER SEED COMPANY
et al., Appellants.

ARBITRATION AND AWARD: Action on Award—Abortive Statutory
1   Award.   An action may be brought to enforce an abortive statutory
award.

ARBITRATION AND AWARD: Submission—Right to Revoke.  It is
2   suggested, but not decided, that either party to a nonstatutory sub-
mission to arbitration may revoke the agreement, so long as it
remains executory.

ARBITRATION AND AWARD: Submission—Estoppel to Question.  A
3   party to a nonstatutory submission to arbitration may not assert
the *voidability* or *invalidity* of the award when, under a prelimi-
nary award, which was confirmed in the final award, he has accepted
that part of the award which is favorable to himself and refuses
to restore the *status quo*.

ARBITRATION AND AWARD: Award—Impeachment for Fraud and
4   Mistake.   Record reviewed, and held insufficient to impeach an
award on the grounds of fraud and mistake.

ARBITRATION AND AWARD: Award—Partial Impeachment.   The
5   fact that an award embraces a definite allowance on an item or
subject-matter *never submitted to the arbitrators*, will not prevent
the enforcement of the balance of the award.

ARBITRATION AND AWARD: Award—Ineffectual Impeachment.  A
6   party who has been allowed a credit in a certain amount for ex-
penditures may not complain that the arbitrators "suggested" in
their report that said party be required to make an accounting to
the court for the items making up said amount.

VENUE:   Residence—Diverse Residences.  An action on a nonstatutory
7   award may be brought against *all* the defendants in a county in
which *some* of the defendants reside.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

OCTOBER 17, 1922.

REHEARING DENIED JUNE 22, 1923.

ACTION upon an award by arbitrators.   Judgment upon a
directed verdict.   Defendants appeal.—*Modified and affirmed.*

, John Y. Luke and J. L. Gillespie, for appellants.

Miller, Kelly, Shuttleworth & Seeburger and Frederic M. Miller, for appellee.

STEVENS, C. J.—I.  This is an action upon an award by arbitrators.  The agreement for submission was in writing, and sought to comply with Chapter 14, Title XXI, of the Code, relating to the submission of controversies to arbitration.  It provided that judgment be entered on the award in the district court of Polk County.  Objections were filed by the appellants in this action to the award and to the entry of judgment thereon by the district court of Polk County, upon the ground, among others, that the written agreement was defectively acknowledged; and, upon appeal, the judgment was reversed upon that ground.  In re Ames-Farmer Canning Co., 190 Iowa 1259.  Thereupon, plaintiff and appellee herein commenced an action upon the award, demanding judgment for the amount found therein to be due the plaintiff from the Dexter Seed Company, J. Le Roy Farmer, and S. T. Farmer, the appellants.  A trial below resulted in a directed verdict for plaintiffs, and all the defendants appeal.

1. ARBITRATION AND AWARD: action on award: abortive statutory award.

The validity of the award and the right of plaintiff to maintain an action thereon is challenged by appellants upon the following principal grounds: (a) That the parties intended and the written agreement contemplated only a statutory award, and that, as appellee elected to proceed in accordance therewith, and to have judgment entered thereon against appellants, no action can be maintained upon the award; (b) that, as the parties intended, and the contract contemplates, only a submission to a statutory arbitration, no action can be maintained thereon as a common-law award; (c) that there were bias and partiality on the part of the two arbitrators signing the award; (d) that S. T. Farmer, one of the arbitrators, resigned, and all the appellants revoked the agreement for submission before the alleged award was made, and that because thereof, the award made by the two remaining arbitrators is without any binding force, and wholly void; (e) that the arbitrators refused to hear evidence, or

to examine witnesses on behalf of appellants; (f) that George Kelley, one of the arbitrators, was guilty of misconduct; and (g) that there were fraud and mistake on the part of arbitrators.

The answer of appellee to the foregoing propositions is: First, a denial of bias, partiality, fraud, or misconduct on the part of the arbitrators, and of their alleged refusal to hear evidence or examine witnesses on behalf of appellants; second, that appellants, having accepted the fruits of the award, and having refused to surrender the same or to restore the *status quo*, are estopped from asserting the voidability or invalidity of the award, and from taking advantage of the resignation of S. T. Farmer as an arbitrator, or of the attempted revocation of the agreement.

We will consider appellants' propositions in the order stated. The agreement for submission provided for the entry of judgment in the district court of Polk County, and both parties in terms waived the right of appeal. Section 4395 of the Code clearly authorizes the enforcement, by action thereon, of awards rendered without compliance with Chapter 14, Title XXI. This section is as follows:

"Awards by arbitrators who may have been chosen without complying with the provisions of this chapter shall nevertheless be valid and binding upon the parties thereto, as other contracts, and may be impeached only for fraud or mistake, but such award can only be enforced by an action."

It is, of course, not claimed by counsel for appellants that an action upon a common-law award may not be maintained under this statute. Their contention is that, where submission of a controversy to arbitration is attempted under a written agreement, properly executed and acknowledged, and designating a court to enter judgment thereon, the intention of the parties must control, and that, if the agreement is so defective that judgment cannot be entered on the award, the proceeding is at an end, and no action can be maintained for the enforcement of the award, as allowed by Section 4395. The statute specifically provides to the contrary. *Older v. Quinn*, 89 Iowa 445, is relied upon by appellants. Plaintiff in that case brought action upon a valid statutory award. The court held that it could not be maintained, for the reason that the parties, having made sub-

mission under the statute,—the proceedings in all respects conforming thereto,—were bound to pursue the remedy provided in such cases. Manifestly, the rule of that case does not come within the purview of Section 4395. The court in the *Older* case specifically reserved decision of the question under consideration, and, therefore, the *Older* case does not support appellants' contention. We shall not undertake to review our prior decisions upon this point, but they are in harmony with the statute which provides for the enforcement of awards by action, where there has been a failure to comply with Chapter 14, Title XXI, of the Code. *King v. Hampton,* 4 G. Greene 401; *Conger v. Dean,* 3 Iowa 463; *Fink v. Fink,* 8 Iowa 313; *Foust v. Hastings,* 66 Iowa 522; *Thornton v. McCormick,* 75 Iowa 285; *Hunter v. Colfax Consol. Coal Co.,* 175 Iowa 245, 316.

What is said above also disposes of appellants' second proposition. The doctrine of election of remedies is not applicable, for the reason already expressed, that the legislature by specific enactment has reserved the right to enforce an award which, although made in contemplation of the statute, has failed because of the failure of the parties to comply with the provisions thereof by action thereon.

II. After the arbitrators entered upon their duties, but before the award was reduced to writing and signed, S. T. Farmer, one of the arbitrators, served notice in writing upon the other two that he declined to proceed further with the arbitration; and each of appellants, in their own behalf, caused a separate notice to be served upon the remaining two arbitrators, protesting against their taking any action while appellants were without representation on the board, and declaring their purpose to refuse to abide or be bound by any award which they might make. S. T. Farmer refused, upon notice and request from the other arbitrators, to proceed further with the arbitration. Thereupon, Kelley and German placed their findings in the form of an award, and signed and swore to the same, and it was filed in the office of the clerk of the district court of Polk County.

2. ARBITRATION AND AWARD: submission: right to revoke.

These are the acts of the parties relied upon to establish the alleged revocation of the agreement. In the absence of any evidence to the contrary, we must assume that the agreement

for arbitration was entered into by the parties in good faith, and for the purpose of conveniently and economically adjusting their differences.   Agreements for the submission of controversies to arbitration, validly executed, are made irrevocable by Code Section 4390.   The agreement in question provided that:

"Said award shall be signed by at least two of the said arbitrators, and that the decision of two of the three said arbitrators shall be binding upon all of the parties hereto, and that said award shall be filed in the office of the clerk of the district court of Polk County, Iowa, and that any judge thereof shall enter judgment thereon upon the application of any party hereto; and all of the  parties do hereby agree that said award shall be a final one, from which no party hereto shall have any right of appeal to the Supreme Court of Iowa, and which right of appeal they each hereby waive."

So far as is disclosed by anything in the record, appellants, at the time of the resignation of S. T. Farmer as arbitrator, and of the service of notice upon the other two, treated the agreement as complying with the statute, and therefore irrevocable.   This assumption is supported somewhat by the language of the notice referred to.

The right of a party to a mere naked agreement for submission of a controversy to arbitration, to revoke it at any time before decision has been reached or an award made, is recognized by the weight of authority.   *Harrison v. Hartford Fire Ins. Co.*, 112 Iowa 77; *Williams v. Branning Mfg. Co.*, 153 N. C. 7 (68 S. E. 902); *Grosvenor v. Flint*, 20 R. I. 21 (37 Atl. 304); *Barnett v. Elwood Grain Co.*, 153 Mo. App. 458 (133 S. W. 856); *Mason v. Bullock*, 6 Ala. App. 141 (60 So. 432); *Paulsen v. Manske*, 126 Ill. 72 (18 N. E. 275).   The courts in a few jurisdictions have held to a somewhat contrary doctrine.   *Berry v. Carter*, 19 Kan. 135; *McKenna v. Lyle*, 155 Pa. 599 (26 Atl. 777); *Frederick v. Margwarth*, 221 Pa. 418 (70 Atl. 797); *Zehnor v. Lehigh Coal & N. Co.*, 187 Pa. 487 (41 Atl. 464); *Guild v. Atchison, T. & S. F. R. Co.*, 57 Kan. 70 (45 Pac. 82). And some courts have gone so far as to hold that either party may revoke the contract, even though they have stipulated therein that it shall be irrevocable (*People v. Nash*, 111 N. Y. 310 [7 Am. St. 747]; *Sartwell v. Sowles*, 72 Vt. 270; *Finucane Co.*,

*v. Board,* 190 N. Y. 76 [82 N..E. 737] ; *Jones v. Harris,* 59 Miss. 214), and although based upon a valid consideration. *Finucane Co. v. Board,* supra; *Paulsen v. Manske,* supra. The right, therefore, of a party to revoke a mere naked agreement of the character in question at any time before the decision or award of the arbitrators, is generally recognized by the courts.

Coming now to the record before us, two questions suggest themselves: First, should the act of the parties, appellants herein, be construed as a revocation of the agreement, express or implied; and second, if such is shown to have been the intention of the parties, and the notice was sufficient for that purpose, has appellee proven such facts as estop appellants from asserting revocation or pleading same as a defense in this action?

As to the first inquiry, it will be observed that the notice does not, in terms, revoke the agreement. Said notice is as follows:

"To George Kelley and Fred German, arbitrators in the matter of the controversy between the Ames-Farmer Canning Company and J. Le Roy Farmer et al.,

"And to the Ames-Farmer Canning Company,

"You and each of you are hereby notified that S. T. Farmer and the Dexter Seed Company object and protest against any action being taken by the said George Kelley and Fred German, as arbitrators in the matter of the controversy between the Ames-Farmer Canning Company and J. Le Roy Farmer et al., while the said S. T. Farmer and Dexter Seed Company remain without representation on the board of arbitration.

"And the said S. T. Farmer and Dexter Seed Company refuse to be bound by any action you may take under these circumstances.

"Signed this 22d day of March, 1919."

On its face, it goes no further than to protest against further proceedings by Kelley and German, without representation of appellants on the board, and to declare their intention to refuse to be bound by any award made by Kelley and German. The notices were evidently prepared upon the theory that the agreement was irrevocable. The expressed desire of the parties was not that the agreement be revoked or abrogated, but that no further proceedings be taken thereunder until appellants were

represented on the board.   It is true that revocation may be implied.   The only basis for an implied revocation in this case is the expressed refusal of appellants to be bound by the award. The written contract made an award signed by two arbitrators binding upon all.   The intention of the parties must be gathered from the notice as a whole.   It is barely possible that the question of appellants' intention was for the jury, but the point is not made by counsel in their assignment of errors or brief points.

Passing this question, without deciding whether the notice served upon the two arbitrators was sufficient to revoke the contract, we shall dispose of appellee's contention that appellants were estopped to revoke the agreement.   After S. T. Farmer and Fred German had been agreed upon as arbitrators, they signed a preliminary agreement to the effect that the unexpired lease to the Tipton plant would be awarded to J. L. Farmer or to J. Le Roy Farmer, or to whomsoever they might direct, reserving to the arbitrators the duty of fixing the price, conditions, and terms upon which the assignment should be made.   This agreement was entered into on February 6, 1919, and the award, which conformed thereto, is dated March 25, 1919.   A brief statement of the record is necessary at this point.

3. ARBITRATION AND AWARD: submission: estoppel to question.

A contract was entered into between the Ames-Farmer Canning Company and the Farmers, by the terms of which the latter agreed to assign to the former, for a consideration of $10,000, to be paid in cash, a lease which they held, to the Tipton-Farmer Canning Company of Tipton, Iowa.   A formal execution of the assignment was not made, nor was the consideration paid. Nevertheless, the business at Ames and at Tipton was conducted together, under the supervision of Le Roy Farmer, and the profits of the business of both plants went to the Ames-Farmer Canning Company.   Some time after the execution of the preliminary award, signed by S. T. Farmer and Fred German, Le Roy went into possession of the Tipton plant, together with the machinery and equipment, and has remained in possession thereof since that time, claiming, with others, to be the owner thereof.   The arbitrators fixed the value of the Tipton property at $13,674.26, and charged Le Roy Farmer therewith.

It is contended by appellee that, by taking and retaining

possession of the Tipton plant, and refusing to restore the *status quo* as it existed at the time of the resignation of S. T. Farmer as an arbitrator, and at the time of the service of the notices by the parties upon the other arbitrators, he is estopped to revoke the agreement or to plead the invalidity of the award.

It is a rule of general recognition that a party who accepts payment in satisfaction of a voidable award, or of anything done by the opposite party in part performance of such award, or receives fruits thereof, will be held to have ratified the same and to be estopped from thereafter questioning its validity or refusing to perform its terms. 5 Corpus Juris 171; *Harrell v. Terrell,* 125 Ga. 379·(54 S. E. 116); *Murray v. Hawkins,* 144 Ga. 613 (87 S. E. 1068); *Thornton v. McCormick,* supra; *Wilkinson v. Prichard,* 145 Iowa 65; *Culver v. Ashley,* 19 Pick. (Mass.) 300; *Furber v. Chamberlain,* 29 N. H. 405; *Taylor v. St. Johnsbury & L. C. R. Co.,* 57 Vt. 106; *Grimmett v. Smith,* 42 Ill. App. 577; *Silliman v. Carr,* 159 Cal. 155 (113 Pac. 135); *Taylor v. Smith,* 93 Mich. 160 (52 N. W. 1118); *Phillips v. Couch,* 66 Mo. 219.

In addition to the denial of the receipt or retention of any fruits of the award, it is contended by appellants that possession of the Tipton plant was taken before the decision or award of the two arbitrators, and not in performance thereof. The distinction suggested by the argument of counsel is that, notwithstanding the fact that possession was taken of the plant, machinery, equipment, and so forth, in compliance with the preliminary award, made in contemplation of a like favorable award upon final hearing by the arbitrators, he is not precluded by an estoppel, although he might be precluded thereby if the same act were performed after the final award was made. The distinction does not rest on principle. The moving consideration and the effect upon the other parties are the same in both cases. To hold that appellants might revoke the agreement at will, and at the same time retain benefits conferred by the preliminary award, would enable them to perpetrate a fraud upon the other parties to the agreement. This could not, of course, be tolerated. Le Roy Farmer did not at any time offer to surrender possession of the Tipton plant or to place the parties *in statu quo.* Whether the estoppel pleaded should be so extended as to preclude appellants from setting up fraud or mistake of the arbitrators in

avoidance of the award, and therefore decisive of most of the questions involved, it is unnecessary to decide. It is sufficient, for the present, to hold that appellants were not in a position to revoke the agreement for submission, without offering to restore whatever fruits they obtained as the result of the preliminary agreement of the arbitrators.

A further contention of appellants' may be disposed of in this connection. The claim is made that the award was not filed within the time required by the agreement. Whatever effect should ordinarily be given to such failure, the estoppel pleaded is applicable to this claim. There is no reason why appellants could not waive this provision of the agreement. They must be held to have done so.

III. The remaining propositions above stated relate to the conduct of the arbitrators, and include all matters relied upon to constitute fraud or mistake. We will, therefore, dispose of them together. Section 4395 of the Code provides that an award made under that section "may be impeached only for fraud or mistake." The term "fraud" is as undefinable in this connection as in any other. As to what mistake will avoid the award has been the subject of frequent discussion by this court. We held, in *Tomlinson v. Tomlinson*, 3 Iowa 575, that a party complaining of an award must make out the mistake clearly and fully, and also show that, but for such mistake, the result would have been different. This rule was reaffirmed in *Gorham v. Millard*, 50 Iowa 554; *Tank v. Rohwoder*, 98 Iowa 154; *McKinnis v. Freeman*, 38 Iowa 364; *Thompson v. Blanchard*, 2 Iowa 44; *Tomlinson v. Tomlinson*, supra; *Vincent v. German Ins. Co.*, 120 Iowa 272; *Turner v. Hartford Fire Ins. Co.*, 185 Iowa 1363.

4. ARBITRATION AND AWARD: award: impeachment for fraud and mistake.

The burden was on the appellants. The fraud charged is bias and partiality of the arbitrators, and misconduct of Kelley in accepting the invitation by the secretary of appellee, on behalf of himself and wife, to become his guest over night at his home, after he had qualified as an arbitrator, and before the award had been released. We need not discuss the allegations of fraud separately. The items of account considered and passed upon by the arbitrators are set out in the award. There can be no fair difference of opinion, upon the record, as to the several

items charged against Le Roy Farmer, with the exception of one, to be mentioned later. Counsel, however, urge with much earnestness that he was denied numerous credits to which he was entitled. The one item charged against Le Roy and his father that is in any sense debatable is $1,845, allowed as rebate from the price of certain seed corn purchased by the Canning Company from the Dexter Seed Company, owned by the Farmers. The two arbitrators signing the award testified that S. T. Farmer, although protesting against the charge, finally consented to it. It was found that the seed was of poor quality, and that the price charged was excessive. There was evidence before the arbitrators to sustain their conclusion on this point.

It is further argued by counsel that the price paid for the seed was allowed by the government in fixing the cost of the pack for 1918, and in determining the profits to be allowed. This is left more or less uncertain by the proof. Whether, if this were conceded, the charge would be illegal, we do not decide. It was one of the items legitimately for the consideration of the arbitrators, and we find nothing in the record to indicate that, in allowing same, the arbitrators did not act in good faith.

Le Roy Farmer's contract with the Ames-Farmer Canning Company allowed him a salary of $200 per month and a bonus of 20 per cent on the net profits received from the operation of the two plants, after deducting 8 per cent on the capital invested and 10 per cent on the capital stock actually invested. His salary was paid in full, or allowed by the arbitrators. The bonus allowed him was $4,153.18. The controversy as to this item is due to different methods of computing profits. The actual paid-up capital of the corporation was $65,000, and including the $10,000 claimed by Farmers, it was $75,000. The stock issued exceeded $130,000. The arbitrators determined that the fair value of the property of the two plants was $100,000. In computing the bonus, the arbitrators disregarded the item for depreciation, which amounted to $14,174.42. Kelley explained the method of ascertaining the profits as follows:

"If I can go over these figures here, I can explain. The gross income of the total sales amounted to $255,000 and some cents. I will leave off the cents. There was an expense account of $76,000; materials purchased $146,000; and rent of the Tipton

plant $3,333.33; and one item set up to take care of the income and excess profit taxes of $4,800—making a total of $230,000 expense. Then I took the figures $14,174, which they had charged for depreciation, and deducted that from the total amount of expenses, because I don't think it should be taken into consideration in determining profits. I don't think Mr. Farmer's percentage of the profits should be got pro rata with the $14,000 deducted. I deducted that from the gross amount of expenses, before deducting the amount of the expenses from the gross amount derived from the profits. These figures I got, I didn't get them from my own account; I took them from some figures on the balance sheet,—that is, to the best of my knowledge. This has been two or three years ago, you know."

This method of ascertaining profits appears to have been agreed to by all three arbitrators. Whether it was technically correct or not, as the method unanimously adopted by the arbitrators, in the absence of a showing of bad faith upon their part, it is not such a clear, unequivocal mistake as to impeach the award.

One further item bearing upon Le Roy Farmer's efforts must be considered. Some time after the corporation was organized, a sum amounting to $13,800 was allowed by the board as salaries to certain officers. It is contended by appellants, who offered evidence to sustain their contention, that this arrangement was a subterfuge, to prevent the payment of a large sum to the government. The evidence was in conflict on this point. The Farmers were not affected thereby, unless they were entitled to share therein as stockholders of the corporation. They contend that they were, in fact, stockholders. The finding of the arbitrators was to the contrary. The Farmers subscribed for $10,000 of the capital stock of the corporation, each giving a note for $5,000 therefor. The stock was issued, but never delivered to them. The arbitrators found that, after differences arose between the Farmers and the other parties interested in the Canning Company as to several matters not necessary to be mentioned in detail, the Farmers refused to take the stock for which they had subscribed, when it was tendered to them. Their notes were canceled by the corporation and returned. Nothing was paid by them for stock, nor was the lease of the Tipton

plant assigned to the corporation. $3,333.33 was, nevertheless, allowed by the arbitrators to Le Roy Farmer for the rent of the plant for one year. This was one third of the amount agreed upon for three years. The record disclosed that Le Roy Farmer voted and participated in some of the earlier stockholders' meetings. This was before the cancellation of the notes given by him and his father for stock, and before they had declined a tender of the certificates. This was one of the matters submitted to the arbitrators for their determination. Whether the Farmers were stockholders in the corporation and entitled to share in the profits of the business as such was a fair question of fact, for the decision of the arbitrators. We find nothing in the record impeaching their good faith in dealing with this item, nor is such material mistake shown in the disposition thereof as will justify setting aside the award.

The arbitrators also allowed appellee $5,000 on account of the alleged breach of his contract against Le Roy Farmer, as liquidated damages. The allowance of this sum cannot be sustained. The rule seems to be well settled that, where an award is void in part, it may be, to that extent, rejected, and the rest of the award given effect, if the rejection of the void findings will not result prejudicially to the rest of the award. *Lynch v. Nugent,* 80 Iowa 422. In the cited case, we held that the decision of a question not submitted to the arbitrators will not invalidate the award, if the decision thereon may be rejected without affecting the rest of the award. The evidence offered upon the trial of this case tended to show that it was the agreement of the parties that the question of liquidated damages was not to be submitted to the arbitrators. Appellee practically concedes that this item should be rejected. In view of this concession, and of the further fact that a jury might well have found that the matter of liquidated damages was orally reserved by the parties from the submission, the allowance thereof by the arbitrators must be rejected. Under our holding in *Lynch v. Nugent,* supra, this will not, however, impeach the award. The question of liquidated damages was in no wise related to any other item or matter considered by the arbitrators, and is separate and distinct from the award thereon. The rule is well supported by authority. *Peters v. Peirce,* 8

5. ARBITRATION AND AWARD: award: partial impeachment.

Mass. 398; *Brown v. Mize,* 119 Ala. 10 (24 So. 453); *Poggenburg v. Conniff* (Ky.), 67 S. W. 845; *Littlefield v. Waterhouse,* 83 Me. 307 (22 Atl. 176); *Bouck v. Bouck,* 57 Minn. 490 (59 N. W. 547); *Clark Millinery Co. v. National U. F. Ins. Co.,* 160 N. C. 130 (75 S. E. 944); *Graham v. Bates* (Tenn.), 45 S. W. 465.

It may be conceded that Mr. Kelley did not avoid the appearance of evil. He should not have allowed himself to become a guest in the home of an officer of the corporation during the progress of the investigation by the arbitrators, and before the award was made; but the record does not disclose that any effort was made to that end, or that he was influenced in any respect thereby.

The investigation of the arbitrators occupied two days, and it appears without dispute in the evidence that all of the items covered by the award were considered during that time, and a decision reached by two of the arbitrators upon the disputed matters, before S. T. Farmer withdrew. The reason given by him for his resignation was that his associates were biased and prejudiced against Le Roy.. The contract provided that an award signed by two of the arbitrators should be final. It was so signed. The award was prepared in the absence of S. T. Farmer, and after his withdrawal. So far as the evidence shows, its conclusion is in accord with the decision reached by the two arbitrators before Farmer's withdrawal. He failed, as a witness, to designate a single question that had not been given full consideration.

IV. One other proposition is relied upon by appellants to impeach the award. It is that, on its face, it lacks finality. Le Roy Farmer, secretary of the Canning Company, received $12,928.12 from the United States for corn sold the government. He claimed to have expended $4,846.52 for the benefit of the company. This amount was allowed him by the arbitrators, but they suggested that he should be required to make an accounting to the court for the items that made up the above amount. This suggestion is binding upon no one, and appellee waived it by asking judgment on the award. So far as this item is concerned, the finding and award of the arbitrators thereon is conclusive upon all the parties hereto.

6. ARBITRATION AND AWARD: award: ineffectual impeachment.

V. Complaint is also made of the ruling of the court upon a motion by appellee to strike certain paragraphs of appellants' answer, and also of many rulings upon objections to testimony. None of the rulings complained of were prejudicial, and it is unnecessary for us to further extend this opinion by a discussion thereof.

A motion was made by Le Roy Farmer, whose residence is in Benton County, to transfer the issues as against him to that county for trial. The motion was overruled. The ruling was proper. Code Sections 3465, 3501. One of the parties defendant resided in Polk County, and the action was maintainable there.

7. VENUE: residence: diverse residences.

We have reviewed the merits of the controversy and limited the scope of the estoppel pleaded within, perhaps, too narrow bounds. It is not sufficient that the evidence offered to impeach the award is of such a character that a jury might have reached a different conclusion thereon than that reached by the arbitrators. Fraud or material mistake must be shown. We said, in *Vincent v. German Ins. Co.*, 120 Iowa 272:

"Mistake of judgment on the part of the arbitrators is not ground for setting aside an award, unless such mistake be so great as to indicate *partisan bias. Thornton v. McCormick,* 75 Iowa 285; *Burchell v. Marsh,* 17 How. (U. S.) 350 (15 L. Ed. 96); *Robbins v. Clark,* 129 Mass. 145; *New York Lumber Co. v. Schneider,* 119 N. Y. 475 (24 N. E. 4); *Michels v. Ins. Co.,* 129 Mich. 417 (89 N. W. 56). If this were not the rule, arbitration would be a useless ceremony; for we rarely find parties content with the award. In order to justify a court in setting aside an award, the misconduct or other ground of impeachment must be made out by clear and satisfactory evidence. *Tomlinson v. Hammond,* 8 Iowa 40; *Thompson v. Blanchard,* 2 Iowa 44; *Mosness v. German Ins. Co.,* 50 Minn. 341 (52 N. W. 932). Every reasonable presumption will be indulged in favor of the award."

No such showing was made in this case, and it is our conclusion that the motion to direct a verdict in favor of appellee, except in the particular stated, was properly sustained. $5,000, allowed as liquidated damages, with interest thereon at 6 per cent from the date of the award, should be credited upon the judgment, and it is ordered that this be done. In all other re-

spects, the judgment of the court below is affirmed.—*Modified and affirmed.*

EVANS, ARTHUR, and FAVILLE, JJ., concur.