BENJAMIN C. WHITLOCK

*v.*

SAMUEL HICKS.

1. AGENCY — *liability of agent to principal.* Where one acting as agent for another sends orders to a commission merchant for the purchase and sale of grain in the Chicago market, for future delivery, in his own name, and takes money from his principal necessary to be used in effecting the business, and a loss of profits occurs through the fault or negligence of the commission merchant, the agent carrying out his instructions will not be liable to his principal.

2. SAME — *as between parties the fact of agency may be shown, although the business was done in agent's name.* Although an agent may transact the business in his own name, and those with whom he dealt only knew him in the transaction, yet, in a suit between him and the person for whom he acted, he may show the true character of the transaction, and their rights will be settled accordingly.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. WILLIAM BROWN, Judge, presiding.

This was an action of assumpsit, brought by Samuel Hicks against Benjamin C. Whitlock. Both the parties resided at Warren, Jo Daviess county, Illinois. The opinion states the facts of the case.

Mr. JOHN W. LUKE, for the appellant.

Mr. LOUIS SHISSLER, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Plaintiff below commenced an action of assumpsit against the defendant, in the Jo Daviess Circuit Court. The declaration contained two special and the common counts. It was claimed that plaintiff employed defendant as a broker, to sell for him in Chicago a large quantity of wheat, at different specified prices, which he did; that plaintiff furnished him a specified sum of money as a margin. The wheat thus sold was to be delivered by plaintiff, at his option, at any time during the month of August, 1872. That defendant, without the knowledge or consent of plaintiff, purchased wheat to fill the contracts at a largely advanced price, and used the money thus left in the hands of defendant as a margin to pay the difference in the purchasing and selling price.

The second count avers that defendant sold, as a broker, for plaintiff in Chicago, 5,000 bushels of wheat at $1.45 per bushel, to be delivered by plaintiff at any time in the month of August, at plaintiff's option. That the wheat was so purchased, and plaintiff directed defendant on the 20th of that month to purchase 5,000 bushels of wheat at $1.20 per bushel to fill the contract of sale. That he purchased at $1.25 per bushel, but has never accounted for the difference between the price of $1.25 and $1.45 per bushel.

The defendant pleaded the general issue, payment, and set-off. The parties waived a jury, and submitted the case for trial to the court, who found the issues for plaintiff, and, under the second count, assessed his damages at $1,025, and rendered judgment against the defendant for that sum, and costs, after overruling a motion for a new trial. He brings the case to this court on appeal, and asks a reversal, on the ground that the judgment is not sustained by the evidence.

The purchases and sales seem to have been made through T. H. Seymour & Co., on the order of appellant. Seymour testified that the 5,000 bushels of wheat were sold to one Templeton, who proved to be insolvent and unable to take and pay for the wheat, and that he took no margin on the sale. This seems to have been contrary to the usage of trade in Chicago, and is, at the least, singular, but be the cause what it may, appellee, as frequently, if not generally, happens with country traders in grain, lost all of his profits, and the money he advanced as a margin, and received nothing in return.

But whether the course of the house of Seymour & Co. be justifiable or not, is not now before us. The question is, whether appellant, from a careful consideration of the evidence, is to be regarded as acting as a broker, or simply as the agent of appellee, in this transaction. Appellant testifies that he was only acting as appellee's agent, and in this he is strongly corroborated by his clerk. The latter swears that appellee had previously transacted similar business with Seymour & Co., and had become indebted to them, and was fearful, if he sent a margin to purchase wheat, that they would appropriate it to the payment of what he owed them. That, to avoid such a contingency, it was agreed between appellee and witness that appellant should act for appellee, to avoid the payment to Seymour & Co.

This witness says that such was the arrangement, and so understood by all parties, that appellant was simply to make purchases and sales for appellee through Seymour & Co.; and

that all parties to the transaction at Warren understood that appellee made no sale to, or purchased of appellant, nor that he was to purchase or sell grain for him ; but that, as appellee's agent, he was simply to communicate appellee's orders to Seymour & Co., and to receive and hold the margin for his own safety. In other words, appellant permitted appellee to have the use of his name in buying and selling through Seymour & Co., that his own name might not appear to them in the transactions thus had. If this is true, and the evidence seems to prove it, as it is only opposed by the statements of appellee, then he had no intention or right to look to or hold appellant as a principal in the transaction. If a person were to hand another the money necessary to pay the margin on such a purchase, with a request that he deliver it to his broker in the city, with directions to purchase a given quantity of grain, no one would suppose the person by whom the money and message were sent, would, if he executed his mission, be liable for the wrongful acts of the broker.

So, in this case, if appellee only desired or expected appellant to convey his orders and money to Seymour & Co., no matter in whose name, he should not, on the same principle, be held liable. It would, however, be far different if appellee had traded directly with appellant, leaving him to employ such agencies as he might choose, to consummate the business. So far as we can see, appellant acted without compensation from appellee, and only carried out his orders to Seymour & Co. simply as would any other agent acting gratuitously. He was not at the place where purchases and sales were made, and so far as the record shows, he was not in the habit of acting as a broker in buying and selling on a margin. But we think the evidence clearly shows that he simply permitted appellee to use his name, so that he could continue to do such business with Seymour & Co. When the arrangement was made, we presume, from the evidence in the record, that neither appellee nor appellant supposed the latter was assuming to guarantee the

acts of Seymour & Co., but both supposed that Seymour & Co. were to transact the business for appellee, in fact, although in the name of appellant.

As between the parties, the true character of the transaction may be shown, and their rights settled accordingly. Hence, as between them, it does not matter that appellant's name appeared to Seymour & Co. as the principal in the transaction. The fact that appellant received from appellee money and notes as a margin was perfectly consistent with the fact that he was only an agent to do appellee's business with his brokers in Chicago. When appellant agreed to use his own name in buying and selling, it was natural for him, as a prudent business man, to require appellee to indemnify him against loss, and especially so when he was acting gratuitously, or at most, but receiving a small portion of commissions received on such transactions from Seymour & Co. All of the evidence considered, we are of the opinion that the evidence fails to support the finding, and that the court below should have granted a new trial, and the judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*