## WILLIAM A. PAULSEN

### *v.*

### CHARLES MANSKE *et al.*

*Filed at Ottawa October 2, 1888.*

1.   MECHANIC'S LIEN—*of the character of estate in land, to which the
lien may attach.*   In order that a mechanic's lien may attach, it is indis-
pensable that the party with whom the contract is made shall have some
estate or interest in the premises upon which the building is erected or
improvement made; but such estate may be the fee, or an estate for
life, or for years, or any interest, legal or equitable, in the land.    The
lien may attach to a mere pre-emption right.

2.   Under the present statute, one in the possession of land under a
mere contract of purchase is to be considered the owner, in the sense
of the statute, only to the extent of the interest he has, and that in-
terest is what the mechanic's lien affects.

3. The owner of a lot entered into an agreement with P., whereby the latter was to erect certain buildings on the lot, those on a certain designated part of the lot to cost $5846, in consideration of which the lot owner was to convey the remaining portion, being ninety-five feet, to P. The owner was to execute mortgages on the whole lot to raise money to enable P. to make the proposed improvement: *Held*, that P. had such an interest in the portion of the lot which was to be conveyed to him under this agreement, as would sustain a mechanic's lien, and that the lot owner, having authorized P. to contract for the buildings and received the benefits of the improvements, could not escape liability to the mechanics and material-men.

4. SAME—*contract through an agent.* If the owner of land authorize a third person to enter into a contract for the erection of buildings thereon, the owner will thereby make his land liable to the lien of the mechanics for labor, etc., thereon.

5. RELEASE OF LIEN—*in whose favor it will operate.* Where payment is not made of a demand for which the holder has a lien, and a release of such lien is made for a certain purpose, as, to give a mortgage priority over it, the court will confine the operation of the release to the purpose intended by the parties thereto. A stranger to the release can take no benefit from the same.

6. Where a release of a mechanic's lien is made, but no one is named therein to whom the release is given and no consideration is named, the court may look to the extrinsic facts to determine both the consideration and in whose favor the release is intended.

7. ARBITRATION AND AWARD—*revocation.* The bringing of a suit to establish and enforce a mechanic's lien is, by implication, a revocation of a prior agreement to arbitrate the matters involved in such suit. A mere agreement to arbitrate will not affect the rights of the parties.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. EDWARD J. JUDD, and Mr. EUGENE CLIFFORD, for the appellant:

The contracts in this case were made with one not the owner of the land, and so no lien can exist in favor of the contractors. *Woodburn* v. *Gifford*, 66 Ill. 285; *Wetherill* v. *Ohlendorf*, 61 id. 283.

The owners of the land in this case (the Browns) contracted with Paulsen to erect certain buildings, and he, in turn, entered

into personal contracts with the lien claimants in this cause. Their position is that of sub-contractors, and they are entitled to no lien, as they have given no notice to the owners, as required by the statute.

The lien in this case, if any exists at all, was specifically released.

It was the duty of the contractors to inform themselves as to the title to the land, and as to whom they were dealing with. *McCarty* v. *Carter*, 49 Ill. 53.

Mr. WILLIAM VOCKE, and Mr. HARVEY STORCK, for the appellees:

As a general rule, an equitable as well as a legal owner of property may create a mechanic's lien. Phillips on Mechanic's Liens, sec. 66.

The word "owner" includes owner in equity as well as at law. *Atkins* v. *Little*, 17 Minn. 353; *Rollins* v. *Cross*, 45 N. Y. 768.

Parties having contracted for the purchase of property, and entered in possession, will, so far as their equitable interests are concerned, be regarded as owners. Phillips on Mechanic's Liens, sec. 69; *Stockwell* v. *Carpenter*, 27 Iowa, 119.

The interest of the owner may be a fee simple, or it may be any estate less than a fee. *Tracy* v. *Rogers*, 69 Ill. 662.

It has been held that the fact that a person acted as agent, may be shown, although he signed the contract with his own name. *Whitlock* v. *Hicks*, 75 Ill. 460.

The liens were not affected by the agreement to arbitrate, as no award was ever made. The bringing of the suit was a revocation of the agreement. Morse on Arbitration, 230; *Peters* v. *Craig*, 6 Dana, 307.

Whatever diversity of authority may exist as to the effect of giving a note, or independent security of a third person, or by mortgage, or extension of credit beyond the period in which the lien may be filed, all the cases agree that there will be no waiver when the agreement to give the note or other security

has not been performed by the promisor. It would be going too far to say that the builder must have intended to waive the lien in the event of the refusal to comply with the agreement. The contrary proposition comes down to that. *The Highlander*, 4 Blatchf. 55; Phillips on Mechanic's Liens, sec. 285.

An agreement to extend the time of payment beyond a year, provided a mortgage should be given, will not defeat a mechanic's lien, if the mortgage should not be executed. The giving of the mortgage would be a condition precedent. *Gardner* v. *Hall*, 29 Ill. 277; *Lutz* v. *Ey*, 3 E. D. Smith, 621.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

It is insisted that the contract under which the labor was performed and material furnished for which the lien is sought to be established in this case, was not made with the owner of the land, "and so no lien can exist in favor of the contractors." The first section of the act gives a lien to any person who shall, "by contract with the owner of any lot or piece of land, furnish labor or material," etc. The second section provides that such lien "shall extend to an estate in fee, for life, for years, or any other estate, or any right of redemption or other interest which the owner may have in the lot or land at the time of making the contract." Construing these two sections together, it becomes evident that by the words, "the owner of any lot or piece of land," as used in the first section, is meant the owner of any interest or estate in such lot or land. It is indispensable that the party with whom the contract is made shall have some estate or interest in the premises upon which the building is erected or improvement made; but such estate may be the fee, or an estate for life, or for years, or any interest, legal or equitable, in the land. This has been the uniform construction placed on the statute by this court. Under a similar statute, (Rev. Stat. 1845, chap. 65, secs. 1-17,) it was

held that a pre-emption right was an interest in land which could be subject to mechanic's lien. (*Turney* v. *Saunders*, 4 Scam. 527.) So, also, the possessory right and interest of the builder. (*Steigleman et al.* v. *McBride et al.* 17 Ill. 300 ; *Garrett* v. *Stevenson*, 3 Gilm. 261.) Under the present statute, the party in possession under a contract of purchase "is to be considered owner, only, in the sense of this statute, to the extent of the interest he owns, and that interest is what the mechanic's lien affects, and as to these proceedings that interest is to be considered as 'the land' on which the first and second sections give the mechanic's lien." *Tracy* v. *Rogers*, 69 Ill. 652 ; *Hickox* v. *Greenwood*, 94 id. 266 ; *McCarty* v. *Carter*, 49 id. 53 ; *Judson* v. *Stephens*, 75 id. 255 ; *Henderson et al.* v. *Connelly*, 123 id. 98.

By reference to the agreements entered into by and between Paulsen and Lewis A. and Flora A. Brown, it will be seen that by the first the Browns covenanted to convey to Paulsen, by warranty deed, the west ninety-five feet of the lot in question,—being all of said lot except thirty-five feet off the east end,—and Paulsen, on his part, covenanted to pay for said ninety-five feet, $5846, by building a row of buildings on said lots according to the second agreement. Both agreements were executed at the same time, and are to be considered together. The second agreement provides, that in consideration "of a contract for a deed," etc., in the first writing mentioned, Paulsen shall build a row of houses on said lot, making the house on the east thirty-five feet thereof reserved by the Browns, a double house, with a barn, and costing $5846. It is then provided, that the Browns shall execute notes, mortgages, and all such documents as may be necessary to borrow money on the lots with which to erect said buildings, all money, however, to be controlled by them, and all work and payment of contractors to be controlled by Paulsen. If the house and improvements put on the east thirty-five feet,—the part reserved by the Browns,—cost more than $5846, they were to assume of the mortgage debt an amount equal to such excess, only. If

the cost was less than that sum, Paulsen was to pay the difference to them. Paulsen was to derive all profits arising from the contract, except what might inure, if any, from the improvement of the east thirty-five feet. If we adopt the construction of this contract contended for by Paulsen, he would hold as purchaser, and his interest would, as we have seen, be subject to the mechanic's lien, and the purchaser at a sale thereof, under such proceedings, would take whatever interest, legal or equitable, he might have in the premises. That the decree was properly entered, as against the interest of Paulsen, can not be questioned, unless the lien had been waived, as we shall see was not done as to him. The fact that Paulsen alone appeals to this court would therefore necessarily lead to an affirmance of the judgment of the Appellate Court, even if it were conceded that there was error in extending the lien to the interest of the Browns in said premises. If the lien existed as to Paulsen's interest, there would be no error of which he could be heard to complain.

But it is not necessary to put this case upon the grounds indicated. Upon examination, it will be found that the scheme contemplated the erection of a house for Mrs. Brown on the east thirty-five feet of the lot, for which, if built according to the plans agreed upon by the parties, she was willing to pay by conveying the residue of the lot to Paulsen. It may be difficult to define the exact legal relation existing between these parties, but it is evident that Paulsen was authorized and empowered by the Browns to erect the row of buildings upon the lot, and they were practically to furnish the money, by raising it on mortgage of the whole property, with which to build the same,—not only on the thirty-five feet reserved by them, but upon the ninety-five feet to be conveyed to Paulsen as well. It was understood that finally the Browns were to assume only so much of the mortgage as the house built for them should cost in excess of $5846. By the terms of the contract they retained control of the money, while the work

and payment of contractors was to be under the control of Paulsen. The evidence shows that the money borrowed,— $22,000,—was paid by checks payable to Flora A. Brown. The Browns amply protected themselves from loss by retaining title to all of the lot, and the control of the money used and to be used in the construction of said building. As we have seen, the profits arising from the value of the west ninety-five feet of the lot, after its improvement and the extinguishment of the mortgage, measured Paulsen's interest in the transaction. The Browns having authorized the work to be done by Paulsen on their lot, can not now compel the mechanics and material-men who have furnished labor and material in carrying out the plan agreed to and authorized by them, to look alone to Paulsen's interest in the land. It can make no difference that the contracts for labor and material were signed by Paulsen alone. He was, in fact, acting for and on behalf of the Browns, and they can not be permitted to receive the benefit and escape the liability of the mechanic's lien attaching to their interest. Story on Agency, 476; *Whitlock* v. *Hicks,* 75 Ill. 460; *Lewis* v. *Rose,* 82 id. 574; *Henderson et al.* v. *Connelly,* 123 id. 98.

In the case last cited, it was understood in the contract of purchase of the land, that the purchaser should erect a house thereon, the vendors agreeing to advance the purchaser $875 to assist him therein as the work progressed. Before the completion of the building the purchaser forfeited his contract of purchase, and the vendors re-entered, as they might lawfully do under their contract, and it was held that the vendors, having authorized and empowered the purchaser to enter into contracts for the erection of the buildings, had subjected their title in the property to the lien of the mechanics. The case at bar is much stronger than the case cited, and the principle there announced is decisive of the liability of the interest of the Browns in the property in controversy.

If any doubt could exist as to the capacity in which Paulsen was acting in contracting, in respect of these buildings, it is removed by the agreement between Paulsen and Mrs. Brown, on the one part, and the builders on the other, in which the matters in difference between them were submitted to arbitration. In that agreement, Mrs. Brown admits, in the most ample manner, that in making said contracts with the builders Paulsen acted for and on her behalf, as well as for himself. This evidence was introduced by the defendants below, and it does not lie in their mouth to complain of its consideration for all legitimate purposes.

It is next claimed that appellees waived and released their respective liens, and that the decree is therefore erroneous. It appears that prior to the 17th day of August, 1885, there had been drawn from the mortgage company $15,000 of the $22,000 loan, secured by the mortgage before mentioned, leaving a balance of $7,000 unexpended in the hands of the mortgage company. Differences having arisen between the lot owners and appellees as to the amount due appellees under their contract, the mortgage company declined to pay the remaining $7000 unless they were assured of the priority of the mortgage over the mechanic's lien. On the last day named, the parties entered into an agreement in writing, in which other lien holders joined, to submit the difference to arbitration, in which the lien of appellees is expressly recognized, but appellees therein expressly "consented, * * * that so far as their claims for mechanic's liens against said premises are concerned, the United States Mortgage Company * * * has a lien prior and superior to theirs, by virtue of a mortgage," the date and amount whereof are given. Paulsen and Brown, on their part, covenanted, that pending the arbitration they would not sell or further incumber said premises, or in any manner change the condition of the title. These articles of submission were presented to the agent of the mortgage company, and payment of the remaining $7000 requested, but the

agent was not satisfied, and refused to pay over the same unless a release was executed by the lien holders. Accordingly, on the 26th day of August, the instrument relied upon as a release was drawn, signed by appellees and others, and the remaining $7000 of the loan paid by the mortgage company. The instrument of the 26th of August names no one to whom the release is made, and expresses no consideration, and we are justified in looking to the extrinsic facts to determine both the consideration and the party in whose favor the waiver or release was intended. Thus looking, it is apparent that the only reason or consideration for the execution of this paper was to obtain the consent of the mortgage company to pay over to Paulsen and Mrs. Brown the sum of money remaining in their hands. Nothing is shown to change the relation of the parties after the execution of the submission to arbitration, and it is manifest that there was no intention to do more than give priority to the mortgage. As said by the Appellate Court: "The legal conclusion from these circumstances is, that the mortgage company, and that company alone, was the party in whose favor the release was intended to be executed. That seems to us to be as clearly shown as though the name of the mortgage company had been inserted in the instrument as releasee. The release given to the mortgage company is available for that company alone. It is not executed to Mrs. Brown or to Paulsen, or upon any consideration moving from them. So far as appears, they are mere strangers to the instrument, and we know of no principle upon which they can be permitted to avail themselves of its benefits."

Nor is the lien of appellees affected by the submission to arbitration, as contended by appellant. While it might be shown, perhaps, that the making of an award was defeated by appellant's refusal to select an arbitrator to take the place of one chosen but unable to serve, it is sufficient to say that no award was made, and until an award was made the authority of the arbitrators was subject to revocation by either party to

the submission. (Morse on Arbitration, 230, and cases cited.) It was not known that Mr. Dryer, one of the arbitrators named, would ever be able to act, and appellees were not bound to allow the Statute of Limitations to run against their lien because of his inability to perform the duty, or because appellant refused to agree to the substitution of another arbitrator. The institution of the mechanic's lien proceedings was, by implication, a revocation of the agreement to arbitrate. Morse on Arbitration, 236.

No question is made as to the amount found by the court to be due the several lienors, and we are unable to perceive any such error in this record as will authorize a reversal, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in this decision.