### Charles H. West v. L. C. Pullen and Wm. Moore.

1. MECHANICS' LIENS—*Equitable Titles.*—A mechanic's lien can be enforced against the owner of a lot who knowingly suffers a verbal sale of it through an agent to a person, and the erection of a building thereon by the purchaser pursuant to such sale.

Mechanic's Lien.—Appeal from the Circuit Court of Marion County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the August term, 1899. Reversed in part and affirmed in part. Opinion filed March 16, 1900.

Statement.—L. C. Pullen, appellee, filed his petition for mechanic's lien for materials furnished Joseph Imhoff, for buildings on lots 3 and 14, in block 1, of M. E. Eagan's addition to the city of Kinmundy, making appellant a co defendant. Appellee Moore interpleaded, claiming also

a lien for materials upon the same property.    Imhoff was
defaulted, and appellant West answered, denying the alle-
gations of both the petition and interpleader.    Upon the
hearing the court held that both Pullen and Moore had
liens as claimed, Pullen to the amount of $37.95 and Moore
$77.63, and in default of payment decreed a sale of the prop-
erty.    The court also found that by reason of the improve-
ments, the value of the property had been enhanced $190.

Appellant insists that sufficient proof was not made to
support the finding in favor of either the original petition
or of the interpleader, and also insists that under the evi-
dence of title to the lots, neither Pullen nor Moore can
enforce a mechanic's lien as against him.

In April, 1897, Mary E. Eagan was owner of the ten-
acre tract of which the lots afterward sold to Imhoff
formed a part.    James H. Gray held a mortgage on the
tract and an agreement was entered into by him and Mrs.
Eagan that if she would convey the tract to him he would
release the mortgage and give her a bond for a deed, which
was done in April, 1897.

In July, 1897, she caused the tract to be surveyed and
staked off into lots and blocks as Mary E. Eagan's addition
to the city of Kinmundy.    Through her husband, as her
agent, she sold lots 3 and 14, in block 1, as platted, but
before the plat was recorded, to Joseph Imhoff, for the sum
of $60.    The date of the sale does not definitely appear, but
seems to have been made in December, 1897, or in the early
spring of 1898.    There was no written contract, but only a
verbal agreement that upon the payment of $60 by Imhoff
a deed was to be executed.    Under this verbal contract
Imhoff went into possession of the lots and erected the
buildings in question.    Subsequently, on May 2, 1898, the
plat of Mary E. Eagan's addition to the city of Kinmundy
was accepted by the city, and on May 4th was recorded.

The evidence shows that the husband of Mary E. Eagan
acted as her agent in the sale to Imhoff, and that she knew
of the erection of the buildings on said lots 3 and 14.    After
the erection of the buildings W. Scott Matthews bought the
interests of Gray, Imhoff and Mrs. Eagan and got title to

the lots by deed from Mrs. Eagan. Subsequently, on May 24, 1898, as averred in his answer, Charles H. West, appellant, bought the lots from W. Scott Matthews. He testifies that at the time of purchase he knew nothing of the claims of Pullen and Moore. The account of appellee Pullen, to give notice of claim and lien, was filed, as shown by his petition, May 6, 1898, and the account of Moore on June 11, 1898, both being filed within the statutory limit, if the dates on the accounts are correct.

FRANK F. NOLEMAN, attorney for appellant.

CHARLES H. HOLT and THOMAS E. MERRITT, attorneys for appellees.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

As against Mrs. Eagan, it is clear that a mechanic's lien could be enforced. She knew, through her agent, of the verbal sale to Imhoff and of the erection of the buildings pursuant to such sale. Interstate Building & Loan Association v. Ayres, 177 Ill. 23; Paulsen v. Manske, 126 Ill. 72.

It is in evidence that when W. Scott Matthews bought the lots he knew the buildings were there, and, as he testifies, "I made a bargain with Gray, Imhoff and Eagan; all four of us were sort of interested in the matter." He also testifies that he got title from Mrs. Eagan. In other words, he bought the interest of Imhoff, Mrs. Eagan and Gray. It is clear, then, that as against Matthews, a mechanic's lien in favor of appellees could be enforced, he, by his purchase, standing in the same relation as did Mrs. Eagan.

At the date of West's purchase from Matthews, Pullen's account for lien was on file, and the time for filing Moore's claim had not expired, the last item of his account being dated March 16, 1898, and his account being filed June 11, 1898. He had then constructive notice of Pullen's claim, and bought within the time in which Moore might file his account for lien. His purchase was then subject to these liens if perfected.

The only remaining question then is, does the evidence sustain the petition of Pullen and the interpleader of Moore. We think, upon examination, that it does sufficiently sustain Pullen's petition. The testimony of Moore tending to support his interpleader, as abstracted, is as follows:

" I am in the lumber business at Salem; I have an account against Mr. Imhoff. (Here Exhibit A, attached to interpleader of William Moore, was shown to witness.) Yes, sir; that is the account; it is $77.63; that is for building material put in a house by Mr. Imhoff and his son; it was a verbal contract between Mr. Imhoff and myself; he wanted to build two or three houses in Kinmundy and he secured lots there; we had several talks about it; I furnished him material to build houses here in Salem and procured lumber and material for that purpose; three or four different times he got lumber; to the best of my knowledge he took the lumber to Kinmundy; he started to Kinmundy and I suppose he took it there; I think he put it in a house; he and his son both said what it was for and that they were going to put it in a house that they were building in Kinmundy; I never saw the house; I sent an agent there to see it; I don't know anything about the building personally.

By Mr. Goodnow:

Q. How much does he owe you entirely on this claim? A. $77.63 on this claim; he owed me something over $100 on the other, but that was paid.

Cross-examination:

I have no personal knowledge of this material, whether it went in the building or not, only what he said; he simply drove out of town with the lumber; at that time he was building only in Kinmundy, I think; he said he intended to build two or three houses, but he was going to use that lumber there and while he was building there, in Kinmundy."

By his interpleader Moore averred that Joseph Imhoff entered into a verbal contract with petitioner to furnish him with such lumber, shingles, nails and other building material as he might want to erect and build a dwelling house upon said lots in Kinmundy; that such lumber and materials were to be furnished Imhoff from time to time, and in such quantities as he might want, and at the usual

market price, the same to be paid for monthly; that under contract petitioner commenced furnishing Imhoff such material as he wanted on February 1, 1898, and from time to time thereafter, to March 16, 1898, furnished lumber and materials to said Imhoff, agreeable to account therewith filed, and marked Exhibit A; that such amounts were furnished as shown by Exhibit A, at the date thereof, to said Imhoff, and the charges opposite such amounts were the market price and were reasonable; that the same were used by Imhoff for erecting a dwelling house upon said lots; that the amount of lumber so furnished, as shown by said account, is $77.63, and that amount is now due petitioner and unpaid from Imhoff; that said materials were to be furnished within one year from date of contract, and last payment was due March 16, 1898

The account referred to by Moore, as will be seen by reference to his testimony, was not put in evidence, nor was its correctness sworn to.

The answer of West denied the allegations of the interpleader and called for strict proof thereof.

There was no proof that the contract was to be completed within a year, nor that the materials were to be paid for monthly, nor that the charges were the market price and were reasonable, nor that his account was contracted within four months prior to the filing of his claim.

The interpleader was but a pleading, unsworn to, and its allegations denied by appellant.

Having failed to prove material allegations in the interpleader, its claim for lien against appellant should have been denied.

Affirmed as to original petition of appellee Pullen, and reversed as to interpleader of appellee Moore.

Remanded for further proceedings in Circuit Court not inconsistent with this decision.

The costs in this case in this court will be taxed one-half against appellant and one-half against appellee William Moore.

Affirmed as to original petition and reversed as to the interpleader.