### Daniel F. Crilly et al. v. Philip Rinn Company.

#### Gen. No. 13,336.

1. ARCHITECT'S CERTIFICATE—*when not essential to right to enforce lien.* Where payment under a building contract is predicated upon the issuance of an architect's certificate, the necessity of such certificate ceases if the architect unreasonably and arbitrarily refuses to exercise his judgment.

2. ARBITRATION—*when not condition precedent to maintenance of suit.* An offer to submit to arbitration is not a condition precedent to the maintenance of an action upon a contract, even though the contract so provides, where the other party to such contract never suggests arbitration and positively states that he will not make any payment upon the claim.

3. ARBITRATION—*effect of provision for.* A mere agreement to submit future differences to arbitration does not oust a court of jurisdiction. It is revocable and the bringing of suit under the contract operates as a revocation.

4. MASTER IN CHANCERY—*when findings of, not disturbed.* The findings of fact by a master will not be disturbed on review unless clearly and manifestly against the weight of the evidence.

Mechanic's lien. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed July 1, 1907.

CASSODAY & BUTLER, for appellants.

WILLIAM S. CORBIN, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellee, complainant below, filed a bill against appellants, Daniel F. Crilly and Elizabeth S. Crilly, his wife, defendants below, to enforce a lien against certain premises owned by Daniel F. Crilly and described in the bill, for an amount alleged to be due complainant for certain work done and material furnished to the defendant, Daniel F. Crilly, by the complainant and used by him, in the construction of a building on the described premises, under and by virtue of a contract between the complainant and Daniel F. Crilly.

The defendants jointly answered the bill, a replication was filed to the answer, and the cause was referred to a master to take proofs and report the same, with his conclusions of law and fact. The master acted in accordance with the order of reference, and reported in favor of the complainant, and overruled the objections of the defendants to his report, which objections were ordered to stand as exceptions, and the court overruled the exceptions, confirmed the master's report and rendered a decree as recommended by the master, which is, in substance, as follows:

"The court finds that the defendant, Daniel F. Crilly, entered into a written contract with the complainant, as set out in the bill of complaint; that the complainant applied to the architect for a final certificate of the amount due it under said contract for extras, and the architect refused to act in the premises, and that by the refusal of the architect so to act the complainant was and is excused from obtaining an architect's final certificate from said architect; that the Philip Rinn Company completed the performance of said contract, and that there was due and owing from the defendant, Daniel F. Crilly, to the complainant, Philip Rinn Company, on the 19th day of January, 1905, the

sum of two thousand sixty-two and 27/100 ($2,062.27) dollars, and for extra material furnished to the defendant the further sum of forty-five and 70/100 ($45.70) dollars; that there is also due from the defendant, Daniel F. Crilly, to the complainant, interest on said sums at the rate of five per cent. per annum from the 19th day of January, 1905, to the date of this decree, making a total of two thousand two hundred twenty-nine and 75/100 ($2,229.75) dollars due and unpaid from the defendant to the complainant on the 17th day of March, 1906, and that there is due to the complainant reasonable attorney's fees in the sum of two hundred twenty-two and 97/100 ($222.97) dollars. The court further finds that the Philip Rinn Company is entitled to a lien on the real estate described in the said bill of complaint, and that the said lien of the complainant is superior to the right of dower of the defendant, Elizabeth C. Crilly, wife of the defendant Daniel F. Crilly, in said real estate.

"Ordered, adjudged and decreed that if the defendants, or one of them, do not pay the complainant the amounts found due it within twenty-five days from this date, the premises described in the bill of complaint shall be sold," etc.

The work and materials, for which a lien is claimed and sought to be enforced, were done and furnished in pursuance of a written contract between the complainant and Daniel F. Crilly, of date June 16, 1904, consisting of 13 articles, in substance as follows:

Art. 1. Complainant is to provide all materials and perform all work for the exterior frames and sash of a three story apartment building, including basement and attic of same, as shown on drawings and specifications prepared by W. Carbys Zimmerman, architect.

Art. 2. Work "to be done under the directions of the said architect, and that his decision as to the true construction and meaning of the drawings and specifications shall be final."

Art. 3. No alterations to be made in the work, except upon written order of the architect, "the amount to be paid by the owner, or allowed by the contractor, by virtue of such alterations, to be stated in said order. Should the owner and contractor not agree as to the amount to be paid or allowed, the work shall go on under the order required above, and in case of failure to agree, the determination of said amount shall be referred to arbitration, as provided for in Art. 12 of this contract.

Art. 4. Contractor to provide proper facilities for inspection of the work by the architect, remove condemned materials on due notice, and make good all work damaged or destroyed thereby.

Art. 5. On failure of contractor to supply enough skilled workmen and proper materials, or in any respect in the performance of the contract, such failure being certified by the architect, the owner to be at liberty, on three days notice, to supply the same, and to terminate the contract, if such architect shall certify such failure to be sufficient ground for such action, etc.

Art. 6. All frames and sash to be delivered at building "when needed and as directed, so as not to delay or interfere with the progress of the work on the building," and to be properly marked, to show their locations, and sorted in lots corresponding with the different apartments.

Art. 7 provides for an extension of time for performance of contractor's work if he shall be delayed by certain causes mentioned in the article.

Art. 8. "The owner agrees to provide all labor and materials essential to the conduct of this work not included in this contract in such manner as not to delay its progress, and in the event of failure so to do, thereby causing loss to the contractor, agrees that he will reimburse the contractor for such loss; and the contractor agrees that if he shall delay the progress of the work so as to cause loss for which the owner

shall become liable, then he shall reimburse the owner for such loss. Should the owner and contractor fail to agree as to the amount of loss comprehended in this Article, the determination of the amount shall be referred to arbitration as provided in Art. XII of this contract.''

Art. 9. The sum to be paid by owner to contractor for said work and materials is $2,097.50, ''subject to additions and deductions as hereinbefore provided, and that such sum shall be paid by the owner to the contractor, in current funds, and only upon certificates of the architect, as follows: Installments not to exceed eighty-five per cent. (85%) of the value of the work set in place at the building. The final payment shall be made within thirty days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued,'' etc.

Art. 10. No certificates or payment, except final certificates or payment, shall be conclusive evidence of the performance of the contract, wholly or in part, or construed as acceptance of defective work or improper material.

Art. 11. Owner to maintain insurance during progress of work.

Art. 12. ''In case the owner and contractor fail to agree in relation to matters of payment, allowance or loss referred to in Arts. III or VIII of this contract, or should either of them dissent from the decision of the Architect referred to in Art. VII of this contract, which dissent shall have been filed in writing with the architect within ten days of the announcement of such decision, then the matter shall be referred to a Board of Arbitration consisting of a disinterested person selected by, and to serve in behalf of the owner, and a disinterested person selected by and to serve in behalf of the contractor, these two to select a third. The decision of any two of this Board shall be final

and binding on both parties hereto. In event of the death or inability to serve of the party named in behalf of the owner, then the owner shall select a person in his place; in event of the death or inability to serve of the party named in behalf of the contractor, then the contractor shall select a person in his place; in event of the death or inability to serve of the third party, then the remaining arbitrators shall choose a person in his place. Each party hereto shall pay one-half of the expense of such reference."

Art. 13. Parties, for themselves, etc., agree to full performance of "the covenants herein contained."

The complainant, prior to bringing suit, did not obtain from Mr. Zimmerman, the architect, any certificate whatever, and it is urged by counsel for the defendants that such being the case, the bill cannot be maintained.

It is averred in the bill that all work was done and material furnished by complainant, in accordance with its contract, and that the delivery of materials was completed on or about December 19, 1904, and the master found, and the evidence sustains the finding, that such delivery was completed December 19, 1904. It also appears from the evidence, and the master found, that all the materials furnished by the complainant were used in the building, and it is not controverted that complainant has not been paid anything for its work and materials. It is averred in the bill that, frequently during the progress of the work, complainant applied to the architect for certificates for 85 per cent of the value of the materials delivered at defendant's premises, and thirty days after the completion of its contract it applied to him for a final certificate, which he refused, and directed complainant to go to Daniel F. Crilly for payment, and said that he, the architect, had not superintended the construction of the building, and had not given certificates to any of the contractors employed by said Crilly in its construction, and that it

was not necessary for complainant to obtain certificates from him, in order to obtain payments on account of its contract, or a final payment, and refused to act in the premises. The evidence shows that complainant delivered frames at the building in question June 24, 27, 28, 29, July 6, 15, 16, 18, 19, 20, 21, 25, 26, 27, 28, 30, August 4, 8, 23, 24, September 3, 14, 15, and October 8, 1904, and delivered all the sash at the building between November 17 and December 6, 1904, and that the last delivery of material was made December 19, 1904.

George P. Rinn, complainant's secretary and treasurer, testified that, about October 1, 1904, he asked Zimmerman, the architect, for a certificate on the contract, and Zimmerman said he did not issue certificates on the work, that he was not regularly employed by Crilly as supervising architect; that he made the plans and wrote the specifications, but beyond that the actual supervision was being handled by Crilly himself, and that under the circumstances a certificate would not be necessary, and directed witness to Mr. Crilly, saying that he should apply to him for payment; that witness called on Crilly for payment on account, who asked him if he had a certificate, and witness said no, and told Crilly of his conversation with the architect, at which Crilly seemed surprised, and said it was regular to have a certificate when payment was due, and witness said yes, but Zimmerman said he was not regularly engaged for that purpose, and Crilly said, "Well, I cannot pay you any money unless you get a certificate from the architect saying how much I shall pay you." Witness testified that he then returned to Zimmerman and told him what Crilly had said, and he said he could not understand it; that Crilly was paying other contractors on the building without certificates, and witness said Crilly would not pay without a certificate, and asked Zimmerman for one, which he refused, and said he would have to talk it over with Crilly and find

out what was meant. In two or three days witness telephoned to the architect, asking if he was ready to have witness call for a certificate, and he said no, that he had been unable to see Crilly and would not issue a certificate without seeing him. Witness then saw Crilly again and remonstrated about being tossed back and forth between him and the architect, with the result that Crilly refused to pay any money without a certificate. The witness' evidence is, in substance, that, after all deliveries had been made, he saw both Crilly and the architect, and his experience was the same as before. The architect would not issue a certificate, and Crilly refused to pay unless witness had one.

William S. Corbin, complainant's solicitor, testified that in February, 1905, he called on Zimmerman, with George P. and Walter J. Rinn, and George P. Rinn said to Zimmerman that he called, as he had before, to get a certificate for the amount due, and Zimmerman said he didn't know why Crilly expected him to issue a certificate, as he was only employed to make a plan for the building and had not issued certificates to any of the other contractors, when witness said to him, "Then you refuse to issue a certificate, for that reason, to the Rinn Company?" and he said "Yes, sir," and also said that if complainant and Mr. Crilly could adjust the matter he would issue a certificate.

Zimmerman, called by defendant, testified on his cross-examination by Mr. Corbin, that at the interview with the Rinn brothers and their attorney, he said it was unnecessary to obtain a final certificate before bringing suit, for the reason that he had not issued certificates on all of the work; that he had not acted as superintendent of the building, and Mr. Crilly had furnished his own clerk of works; that he, Zimmerman, was not the regular superintendent, and would go to the building only occasionally, instead of daily, and also stated that complainant and Crilly would have to

agree on the amount due, and then he would issue a certificate.

Article 1 of the contract named Zimmerman as the architect, and article 2 provides: "It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of the said architect," and article 9 provides that payments shall be made "only upon certificates of the architect."

The architect was clearly empowered by the contract to issue certificates as therein provided, and, as between the parties to the contract, it was his duty so to do. The evidence shows that the complainant did everything it possibly could to procure certificates on account as the work progressed, and the final certificate on its completion, and that it was not its fault that it did not procure the final certificate.

The architect having frequently and positively refused to act, when requested to issue certificates, and the owner having refused to make any payment without the production of a certificate, complainant's sole remedy was by law. The architect did not, as the evidence, including his own testimony, shows, exercise his judgment as to whether complainant was entitled to a certificate; but refused certificates merely on the ground that he was not regularly employed to superintend the construction of the building and had not issued certificates to other contractors engaged in its construction. In his cross-examination he said: "When I testified a few moments ago that Mr. Crilly took the ground that there was nothing due under the contract, I did not mean to imply that I passed any judgment on the merit of Mr. Crilly's claim, but merely that Mr. Crilly claimed that his damages amounted to more than the amount due under the contract." By letter of date December 1, 1904, complainant requested from the architect a certificate on the contract, stating that fully 95 per cent of the work done had been done

and that nothing had been paid, which letter the architect answered as follows: "In answer to yours of Dec. 1st will say that the question of payment would, under the circumstances, be best taken up by you with Mr. D. F. Crilly." In view of the architect's unreasonable refusal to exercise his judgment in the matter, or to act at all, the objection that complainant commenced suit without having obtained the architect's certificate, cannot be sustained. Fowler v. Deakman, 84 Ill. 130; McDonald v. Patterson & Co., 186 *ib.* 381, and cases cited.

It is urged that, by the terms of the contract, the submission to arbitration of their differences, by the parties, is made a condition precedent to bringing suit. If this be true, it was quite as binding on the defendants as on the complainant; yet the defendant, Daniel F. Crilly, never suggested arbitration of his broad claim for damages, refused complainant's request to consult with his own architect in respect to his claim, and have it adjusted, if possible, and expressly said to complainant that he would not pay him a dollar. He, certainly, is not in a position to urge that the matter should have been submitted to arbitration. The objection, however, is legally untenable. A mere agreement to submit future differences to arbitration does not oust the court of jurisdiction. It is revocable, and the bringing suit is a revocation. Frink v. Ryan, 3 Scam. 323; Ross v. Nesbitt, 2 Gilm. 252, 255; Waugh v. Schlenk, 23 Ill. App. 433, 439; Paulsen v. Manske, 126 Ill. 72, 80; 2 Am. & Eng. Ency. of Law, p. 570, and cases cited.

Lastly, counsel for defendants contend that the frames and sash differed from the specifications in numerous respects and were poorly constructed, and that work on the building was delayed by failure of complainant to deliver the sash and frames as needed and directed.

It was stipulated on the hearing before the master,

for the purpose of permitting defendants to prove any claim they might have for damages, that they might introduce evidence tending to prove a set-off, counter claim or recoupment, under their answer, and with the same effect as if they had filed a cross-bill, and the defendants, under the stipulation, called witnesses to prove damages. The report of the master, aside from the evidence, is very meagerly and insufficiently abstracted, and we have been compelled to resort to the record to read and examine it. It is very full and elaborate, and evinces thorough examination and consideration of the evidence, and especially of the evidence relating to defendants' claim for damages. The master shows that in respect to most of the claims of the defendants the evidence fails to furnish data on which an estimate of damages, if any, can be made. In one instance, namely, a difference between the kind of wood used and that specified, the master allowed a credit to defendants; but, for good reason, as we think, not so large a credit as they claim. The evidence shows that in respect to nearly all defendants' claims, they kept no account whatever.

Having carefully read and considered all the evidence, we concur in the master's conclusions. The master's report has been confirmed by the court, and in such case the rule is that it will not be disturbed, if not clearly and manifestly against the weight of the evidence, which we do not think it is. Siegel v. Andrews Co., 181 Ill. 350, 356, citing with approval Miltimore v. Ferry, 171 Ill. 219.

The decree will be affirmed.

*Affirmed.*