EVA NEMIE *v.* HENRY TODD.

May Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed November 6, 1915.

*Trade Name—No. 117, Acts 1908—Construction—Return of Trade Name — Necessity — Agister's Lien — Possession— Waiver of Lien—Whether Question of Fact—Trover— Maintenance of Action—Right of Immediate Possession— —Fraudulent Conveyance—What Constitutes—Husband's Donation of His Services to Wife—Instructions.*

Under No. 117, Acts 1908, requiring one doing business in a name other than his own to cause to be recorded in the town clerk's office a return reciting the name under which such business is conducted, where the name of the business conducted by plaintiff was the Vermont Produce Company, a return giving the name as the Vermont Products Company is sufficient, for such a slight error is not likely to mislead.

Things may be illegal as regards the purpose of a regulative statute without being illegal in the sense of being void.

The mere provision for an injunction in case business is conducted contrary to the requirements of a regulative statute does not necessarily imply that transactions so conducted are outside the field of legal remedy.

§3, No. 117, Acts 1908, requiring the return of a person doing business under a name other than his own to be filed in the office of the town clerk within ten days after the commencement of business is directory merely, although §6 declares that any person conducting business contrary to the act may, upon complaint of the commissioner of taxes, be enjoined; for §11 prohibits the institution of proceedings for the enforcement of any right or obligation unless

the return has been filed and the registration fee paid prior to the issuance of the original writ, and so clearly recognizes the validity of claims accruing to one doing business in disregard of the ten-days requirement.

An agister has no lien at common law except by agreement, and, although a lien is given agisters by P. S. 2658, retention of possession is necessary to such lien.

While waiver of a lien rests largely in intention and is ordinarily to be determined by the trier of fact, the court, where the facts are conceded, leaving no inference to be drawn as to the lienor's intention, may, as matter of law, determine that a lien has been waived.

Possession, or the right to immediate possession, is essential to the maintenance of trover.

Where defendant, an officer having for service an execution against the property of plaintiff's husband, agreed with an agister pasturing plaintiff's colt to pay the pasturing in case possession was surrendered, and defendant, with the agister's consent, later took the colt under the execution, as the property of plaintiff's husband, the agister's lien was by the agreement and surrender of possession, wholly waived, and plaintiff's right to immediate possession restored, and so she could maintain trover against defendant for the conversion of the colt.

Where a wife owns a business, her husband may give her his services in connection therewith, regardless of his creditors.

Though the bill of exceptions recites an exception to the refusal of a designated instruction, such exception will not be considered on review, where the transcript is made controlling and shows that no such instruction was requested.

Where plaintiff claimed that a business belonged to her, and not to her husband, and that defendant had converted her colt by seizing it under an execution against her husband, a charge that too great care to make a transaction seem regular is a badge of fraud was properly refused.

TROVER. Pleas, the general issue, that the goods were the property of plaintiff's husband, and justification under process against him. Trial by jury at the September Term, 1914, Chittenden County, *Butler*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The bill of exceptions referred to the transcript and made it controlling.

*Guy M. Page* for the defendant.

*J. E. Cushman* and *Sherman R. Moulton* for the plaintiff.

MUNSON, C. J.   The action is trover for property taken and sold by the defendant on an execution against the plaintiff's husband.   The plaintiff claims the chattels as her separate property, and sues in her own name, without other designation or description.   She testified that she was doing business as the Vermont Produce Company, with her own money.   The return made under No. 117, Acts of 1908, gives the name as the Vermont Products Company, and was not filed within the time required by the act, nor until after the property was taken in execution.

The statute requires a return setting forth the name under which the business is carried on.   The defendant contends that there is no return of the name used by the plaintiff.   The plaintiff claims that the word which creates the variation is so nearly like the word used in the name that it constitutes a substantial compliance with the statute.

The statute requires, in connection with the return of the business name, a return of the individual name and residence of the person doing the business, the name of the town where the business is located, and a brief description of the kind of business to be transacted.   A slight error in the business name is not as important as it would be if the details required were fewer. In this case the word "Company" is preceded by two descriptive words, and the error occurs in the second of these words.   So the mistake is not one that would lead to an erroneous entry in any system of indexing.   The erroneous word, although not *idem sonans,* is one that might easily result from the misunderstanding of an indistinct utterance or foreign accent.   We think the error in the return is not one that would be likely to mislead any interested person to his prejudice.

Section three of the act requires that the return be filed within ten days after the commencement of the business.   Section six provides that one carrying on business contrary to the act may be temporarily and permanently enjoined on complaint of the commissioner of state taxes.   Section eleven prohibits the institution of proceedings for the enforcement of any right or obligation, unless the return has been filed and the registration

fee paid prior to the issuance of the original writ or complaint. The defendant claims that the failure to file the return within the ten days will prevent a recovery, although it was filed before the suit was brought.

The defendant cites a number of cases from other jurisdictions, but says that no statute precisely like ours has been construed by a court of last resort. It is evident that the determination of a question of this character must depend largely upon a consideration of the exact language of the statute. Two cases of statutory construction in this State are relied upon. The statute considered in *Bugbee* v. *Stevens*, 53 Vt. 389, provided that "No lien reserved on property sold conditionally and passing into the hands of the conditional purchaser" should be "valid against attaching creditors or subsequent purchasers without notice," unless the vendor took and caused to be recorded a certain memorandum; and provided further that this record should be made within thirty days after the property was delivered. It was claimed that if the record was not made within the thirty days, it would be constructive notice to attaching creditors and subsequent purchasers who became such after it was made; but the Court considered that the provision which required a record within thirty days was as peremptory as that which required the memorandum. The manifest purpose of this statute is to make the specified transaction invalid as against the persons designated, if the requirements of the statute are not complied with. The statute considered in *Lycoming Ins. Co.* v. *Wright*, 55 Vt. 526, was one by which the transaction of insurance business in this State by a foreign company before obtaining a license was expressly prohibited.

The argument of the defendant is based mainly upon the language of section six, which provides that one carrying on business "contrary to this act" may be enjoined on complaint of the tax commissioner. It is said that a business carried on in contravention of law is an illegal business, and that the provision for an injunction shows that in the contemplation of the statute any non-compliance with its provisions will make the business illegal. It is urged that no implication unfavorable to this view can be drawn from the provision which precludes one subject to the act from bringing suit unless the returns are filed prior to the issuance of the writ. It is said that the purpose of this provision is to compel the filing of returns before

the expiration of the ten days if it is desired to institute proceedings within that time.

The statute contains no express prohibition, and no declaration of invalidity, and the intention of the Legislature is to be gathered from the act as a whole. The provision for an injunction in case the business is carried on contrary to the act does not necessarily imply that the transactions previously had are outside the field of legal remedy. Things may be illegal as regards the purpose of a regulative statute, without being illegal in the sense of being void. We think the section relating to the institution of proceedings cannot be satisfactorily accounted for as a provision for suits during the ten days allowed for filing the returns. The statute seems clearly to recognize the claims which have accrued to one doing the business in disregard of the ten days requirement as valid demands, which can be enforced if the returns are filed and the fee paid before proceedings are commenced. In this view, the provision requiring that the returns and payment be made within ten days is to be treated as directory merely.

One of the chattels claimed to have been taken from the plaintiff's possession was a colt which was being pastured by one Stewart. The defendant claimed that there could be no recovery as to the colt because of the agister's lien, and saved the question by several exceptions. Plaintiff's counsel recognize the rule that to maintain trover the plaintiff must have possession or the right to immediate possession; but they claim that the lien of an agister is not a right which precludes this remedy, and cite authorities which hold that certain common law liens do not deprive the general owner of the right to immediate possession as against a wrongdoer. An agister had no lien at common law except by agreement. *Wills* v. *Barrister,* 36 Vt. 220. The common law right was extended to agisters by No. 91, Acts of 1884, now found in §2658 of the Public Statutes. The necessity of retaining possession is the same under the statute as at common law.

Stewart testified that the defendant took the colt from his pasture when he attached it; that defendant spoke to him about what he was going to do, and he told him he might take the colt if he would pay. Defendant testified that he had a talk with Stewart, and understood from him that he should be responsible for the pasturage; that Stewart did not require him to pay at

the time—that he knew he would pay all right. The pasturage was afterwards paid by defendant from the proceeds of the sale.

Plaintiff claims that the lien, if otherwise effective as a defence, was waived by this arrangement. Defendant claims that if there was a waiver it was a waiver for a particular purpose and for the benefit of a particular person, and must be restricted to that purpose and person; that there was nothing in this agreement that entitled the plaintiff to remove the colt without satisfying the agister's claim; that defendant's agreement to pay for the pasturage was conditioned upon the removal of the colt by him; and that if, between the time of the conversation and the time of the taking, the plaintiff had removed it, the defendant would not have been liable for the pasturage. It is said that the waiver was not complete until possession was actually taken; that it was the taking of possession that constituted the conversion; and that at no time previous to the taking did the plaintiff have a right to the immediate possession of the property.

An exception to the charge must be mentioned here, to present fully the defendant's claims regarding this branch of the case. The defendant excepted "to the failure to leave to the jury the question whether or not such lien existed or such facts existed as would make a lien." It is now argued that the question whether the agreement between Stewart and Todd amounted to a waiver should have been left to the jury; that their contract was of doubtful meaning and was therefore for the jury to interpret. The language of the exception was not well calculated to direct the attention of the court to the point now made, but the point can be included in our consideration without detriment to the plaintiff. It is true that a waiver rests largely in intention, and is ordinarily to be ascertained by the trier. But here the agister and the defendant are entirely agreed as to the arrangement under which the property was taken. There was no inference to be drawn as to the agister's intention, for his act as left by the testimony was capable of only one construction. He parted with the possession of the property in reliance on the defendant's promise to pay the pasturage. So this branch of the case stands upon the defendant's exception to the court's refusal to direct a verdict as to the colt.

It is certain that the rule which makes possession or the right to immediate possession essential to the maintenance of trover is still generally adhered to, and held applicable in the case of liens arising by operation of law. We apprehend that such relaxation as there has been appears mainly in a readiness to find in the circumstances of the case a waiver of the bailee's rights. In *Bailey* v. *Quint*, 22 Vt. 464, Judge Redfield expressed the belief that where one entitled to a lien had never asserted it, the mere existence of such dormant right would not defeat the action of the general owner for a trespass or conversion committed by a mere stranger We know of no intimation in our cases that goes beyond this. But we dispose of the case presented without considering what the right of the plaintiff in this respect would have been if the defendant had taken the property without the consent of the agister.

The defendant's claim that the effect of the waiver must be restricted to the particular purpose for which it was made is not tenable. This waiver, however characterized, was one which involved a yielding of possession to one whose claim was adverse to the bailor's title. The defendant relies upon *Paulsen* v. *Manske*, 126 Ill. 72, 18 N. E. 275, 9 Am. St. Rep. 532, where it was held that when a release of a mechanic's lien is given to a mortgagee merely for the purpose of giving priority to the mortgage, its effect will be confined to the purpose intended by the parties, and that a stranger to it will not be permitted to avail himself of its benefits. This was the waiver of a lien which had no connection with the question of possession. The fact that the defendant's promise of payment was conditioned on his taking the property is not material. The defendant in fact took possession under the permission given, and the effect of such authorized taking upon the rights of the owner was not destroyed by the previous possibility that he might not take it. The fact that the conversation was by telephone indicates that the taking did not immediately follow the permission; but we think these two parts of a completed transaction, although not simultaneous, cannot be given the separation in legal effect which the defendant claims, and by means of which he would defeat the plaintiff's right to stand upon the basis of possession. We think that when the defendant took the colt, his obligation to pay the pasturage became absolute, and the agister's waiver of the lien complete; and that the plaintiff thereby acquired the

right to possession which entitled her to bring trover against the defendant.

The defendant argues four exceptions taken to the refusal to charge in accordance with his requests.   One request was that if the plaintiff turned the property over to her husband to deal with as he chose, as proprietor, she could not recover.   This request, if given a meaning applicable to the case as tried, was clearly covered by the charge.   The question whether the plaintiff was in fact the owner of the property, or was pretending ownership to protect the property of her husband, was adequately presented, with what appears to have been a full reference to the various matters relied upon to establish the fraud. There was also a request to charge that if the plaintiff's husband gave her his services for an unfair compensation, with intent to defraud his creditors, and thereby contributed to the value of the potatoes sold by the defendant, he had an interest in the potatoes, and the plaintiff could not recover for them.   The defendant was not entitled to this instruction.   If the money with which the business was being done was in fact the property of the wife, and the business remained hers, the husband could give her his services in connection with it if he desired to. Error is claimed in that the court refused to charge as requested that possession of personal property is *prima facie* evidence of title.   It appears from the transcript that this request was not among those presented to the court.   It was not error to refuse to charge that "too great care to make a transaction seem regular—conduct which is unnaturally careful—is evidence of fraud."

*Judgment affirmed.*